Argued 1 August; decided 12 August, 1901.

## YOUNG *v.* HUGHES.

[ 65 Pac. 987, 66 Pac. 272.]

EQUITABLE LIEN ON PROCEEDS OF CORPORATE PROPERTY.

1.   Where the property of a corporation has been sold and the proceeds delivered to a trustee, to distribute to the stockholders, and such trustee died before the fund was all distributed, the stockholders who have not received their share have a lien on the undistributed funds, and may recover the same of the trustee's administrator.

COMPENSATION OF TRUSTEE.

2.   Where a trustee, who received the proceeds of the sale of the property of a corporation to distribute to the shareholders, and was to have a specified sum for his entire services, died before the distribution was completed, his estate should be allowed, out of the remaining funds, such proportion of the agreed compensation as the amount distributed by him bore to the total amount to be distributed.

PROPRIETY OF A RECEIVERSHIP FOR MONEY.

3.   Where the object of a suit is to establish a lien on a fund and to secure its disbursement, a receiver should not be appointed, but the final order should direct the fund to be paid into court to be distributed by the clerk.

TAXING COSTS AGAINST ESTATES.

4.   Where an administrator or executor is sued in relation to some estate matter of which he has no knowledge, he must necessarily make some defense, and if he is unsuccessful the costs and disbursements of both parties to the proceedings in all courts may properly be charged upon the estate: *Dunham* v. *Siglin*, 39 Or. 291, applied.

ALLOWING ATTORNEY'S FEES AGAINST TRUST FUND.

5.   The propriety of allowing a fee out of a trust fund to attorneys who have defended it, and the amount of such an allowance, are questions that must first be presented to the trial court; the supreme court, under the practice in Oregon, has no original jurisdiction over costs and allowances in the trial court, it can only review the proceedings of the lower courts.

OBJECTIONS TO COST BILL—FILING AFFIDAVITS.

6.   Since the amendment of Section 557 of Hill's Ann. Laws by the act of 1891 (Laws, 1891, p. 114), affidavits may be filed and considered in passing on objections to a cost bill: *Crawford* v. *Abraham*, 2 Or. 163, distinguished.

COST BILL—AMENDED STATEMENT—RULES OF COURT.

7.   Rule 23 of the Supreme Court, allowing a prevailing party the actual cost of printing his abstract or brief, not exceeding certain limits, taken in connection with Section 557 of Hill's Ann. Laws, requiring a claimant of costs and disbursements to file an amended verified statement, if the claim is objected to, require the amended verified statement to be more than a pleading, it must be sufficiently in detail to make out a *prima facie* case over the objections; as, for example, a cost bill claiming the expense of printing a brief at $1.00 per page was objected to as being unreasonable to the extent of twenty-five cents per page, whereupon the claimant filed an amended statement setting out the same sums denying the claim of unreasonableness. *Held,* that the amended statement was insufficient to support the claim for more than the amount admitted by the objection, as it did not show the actual cost or any facts to overcome the objections.

COSTS—EXPENSE OF TRANSCRIBING STENOGRAPHIC NOTES.

8. Where a decree in the trial court was rendered before the stenographic notes of the case had been transcribed, a reasonable charge for extending them will be allowed the prevailing party, where the extension is necessary for a presentation of the case to the supreme court.

COSTS—COPIES OF PETITION FOR REHEARING.

9. The expense of preparing copies of a motion for rehearing is not a taxable item of costs where the work was merely clerical.

From Marion : REUBEN P. BOISE, Judge.

Action by S. E. Young and others against John Hughes, as administrator of the estate of Seth R. Hammer, deceased. From a judgment for plaintiffs, defendant appeals.                                         MODIFIED.

For appellant there was a brief over the names of *Woodson T. Slater* and *William M. Kaiser*, with an oral argument by *Mr. Slater*.

For respondents there was a brief and an oral argument by *Messrs. W. J. D'Arcy, John A. Carson*, and *Peter H. D'Arcy*.

MR. JUSTICE MOORE delivered the opinion.

This is a suit by certain stockholders of a corporation, for themselves and on behalf of all others similarly situated, to establish and enforce a lien upon a fund in the hands of the representative of a deceased trustee. It is alleged in the complaint, in effect, that the Gold Mountain & Dry Gulch Gold & Silver Mining Company, a corporation, sold its mining property, for which its secretary, Seth R. Hammer, received the sum of $5,000, to be distributed to its stockholders in certain proportions ; that on December 2, 1898, Hammer died intestate, having in his possession of said money the sum of $1,312.12 and certain office furniture, the property of the corporation ; that on December 5, 1898, the defend-

ant, John Hughes, was duly appointed administrator of the decedent's estate, and, having qualified and entered upon the discharge of his trust, wrongfully took possession of said money and furniture, which, upon a demand therefor, he refused to deliver to plaintiffs; that more than one hundred stockholders of said corporation, residing in this and other states, have not received their share of said fund, and their number and diverse citizenship render it impracticable that they should be made parties; that there is no person now authorized to demand, take possession of, or sue for the recovery of said money or property in the name of the corporation, or to act for or on its behalf or that of its stockholders; and that it is necessary that some qualified person should be appointed to take charge of said money and property for the benefit of plaintiffs and the other stockholders, so that he may convert the property into money, and distribute it, with such fund, to those entitled thereto, according to their respective rights. The summons was served upon the defendant, John Hughes, only, who alone answered, denying the material allegations of the complaint, and averring that prior to the commencement of the suit he offered to deliver to the plaintiffs any property belonging to the corporation which they could identify as such; but, they failing and refusing to identify any of the corporate property, he took its seal and dating stamp into court for them. The reply having put in issue the allegations of new matter in the answer, a trial was had, resulting in a decree awarding the plaintiffs and other stockholders who had not received their share of the proceeds of sale the sum of $1,201.62 of the money in Hammer's possession at the time of his death, appointing Amos Strong receiver to hold said sum for, and to distribute it to, the unpaid stockholders, and that plain-

tiffs recover of Hughes, as administrator, their costs and disbursements; from which decree he appeals.

1.   A careful examination of the testimony convinces us that the court properly found that the plaintiffs and other stockholders had a preferred lien upon a part of the money received by Hammer upon a sale of the mining property remaining in his possession at the time of his death.    A. N..Bush, an accountant in the bank of Messrs. Ladd & Bush, at Salem, Oregon, testifies that for many years Hammer had been a customer of their bank, that he was acquainted with his mode of doing business with banking institutions, and that it was his general custom to deposit money held by him for others in such a manner as to show who were the equitable owners thereof.   The testimony shows that upon Hammer's death a box belonging to him, and kept in the vault of said bank, was found to contain certificates of deposit payable to himself or order in the sum of $1,050, and there were also found in his office like certificates in the sum of $350.   It also appears that, while the mining property of the corporation was sold by its officers in pursuance of authority conferred upon them by a majority of the stockholders, several of the minority were dissatisfied with the price received therefor, and this fact probably explains why a part of the money remained in Hammer's possession at the time of his death.   These displeased stockholders had threatened to sue the corporation, causing Hammer to fear that their menaces would be executed, and that they might possibly secure a greater proportion than had been paid to the others, to circumvent which he probably changed the money he had received in trust to his private account.   Several witnesses called by the plaintiff testified that he informed them that he changed the money into these certificates for that purpose.   It is conceded

by every witness that Seth R. Hammer was scrupulously honest, and if, in his last illness, he had been able to communicate with those who visited with and ministered to him, he would doubtless have fully explained the nature and extent of his trust, and accounted for every dollar he held for the stockholders. His sudden sickness, however, superinduced a comatose state that resulted in death before he could make the necessary explanations.

R. B. Cannon, president of said corporation at the time its mining property was sold, states in his deposition, in effect, that, being more conversant with its business than any other person, he made, soon after said sale was consummated, a list of its stockholders at that time ; that the list was prepared for Hammer's benefit and convenience, to enable him to pay the stockholders the several sums due each ; that the writing on said list in ink was done by him, and represents the sums paid for stock, and the figures in pencil thereon were made by Hammer, and represent the sums to be paid to the several stockholders ; and that when Hammer paid any of the money so received he made on said list, opposite the stockholder's name, an "X," as evidence of such payment. The list in question was attached to the deposition. The deponent further says that Hammer was to receive for his services in disbursing the money left with him the sum of $250, provided there was that much left after paying the stockholders the sums due them. Amos Strong, as plaintiffs' witness, testified that soon after the mine was sold he saw Cannon making said list by taking a transcript from the books ; that the stockholders who had paid cash for their stock were listed separate from those who had secured such stock by performing labor, or in any other manner ; that eighty cents per share was to be paid to those who had paid cash for their stock and twelve and one half cents per share to all others, and that this pro-

portion was determined at a meeting of the stockholders ; that about October, 1898, he saw said list in Hammer's office, and, looking over it with him, he observed that he had marked an "X" thereon as evidence of the payments he had made to the stockholders, using the list entirely to keep his accounts upon in relation thereto ; and that the witness secured the list from Hughes, and attached it to the interrogatories which were sent to Cannon.    An examination of said list shows that it does not contain any memorandum of two hundred shares issued to the plaintiff H. W. White, upon which he demands, and the court apparently allowed, the sum of $169 ; nor is any entry made in the stock ledger of such stock.    The only credit he has thereon is of twenty shares assigned to him by R. H. Miller.    These two hundred shares of stock, evidenced by four certificates, numbered 419 to 422, inclusive, for fifty shares each, were offered in evidence, thus presumptively proving that White had not received the money due him thereon, as the testimony shows that it was Hammer's custom to take up these certificates of stock upon the payment of the dividend due the stockholder, and further showing that the stock ledger evidently does not contain a correct memorandum of the stock issued.    But how White was entitled to more than $160 on two hundred shares of stock is not disclosed by the transcript ; and when it is remembered that eighty cents per share was the dividend payable to those who had paid cash for their stock, it would seem that he was awarded $9 more than was due him.

2.    When said list was delivered to Hammer, it showed a liability of the corporation to its shareholders whose names were noted thereon in the sum of $4,667.76, and the check marks made by him evidence payments amounting to $3,628.63, thus leaving a remainder of $1,039.13 due

the stockholders, and showing that, if he had lived to discharge the trust assumed by him, he would have had remaining the sum of $332.24 of the money left with him. Having received the sum of $5,000, and disbursed $3,628.63, he had in his possession at the time of his death $1,371.37. The list so delivered to him having shown that when he fully discharged the duty which he assumed he would have had in his possession the sum of $332.24, this fact must have induced him to disburse the money under an agreement, as stated by Cannon, that he was to receive the sum of $250, "provided there was that much left after paying the stockholders the sums due them." He did not live to execute the contract fully, but, having performed a substantial part of it, his estate is entitled to such a proportion of the $250 promised him as his disbursements bear to the sum required by said list to be paid to the stockholders, or seventy-seven and seven tenths per cent, to wit, the sum of $194.25. Hughes, as administrator, having received of the money belonging to the stockholders the sum of $1,371.37, will therefore deduct therefrom, as belonging to the estate, the sum of $194.25, leaving a remainder of $1,177.12, which is impressed with a lien in favor of said stockholders. The decree of the trial court will, therefore, be modified accordingly.

3. The statute authorizes the appointment of a receiver after a judgment or decree has been rendered to carry the same into effect: Hill's Ann. Laws, § 1061. In the case at bar, however, Hughes, as administrator, having converted the property into money, which he has on hand, no active duty is required of any one to execute the decree, except the mere payment of the money to those entitled thereto, in which case there is no necessity for a receiver, the rule being that, where the object of the suit is merely

to compel the payment of money, there is no sufficient ground to warrant the appointment of a receiver : Beach, Rec. (Alderson's ed.) § 108.   The fund impressed with a lien having been reduced to money, the clerk of the court is its proper disbursing agent, and hence that part of the decree appointing Amos Strong receiver is reversed.

4.   Hughes, having no knowledge of the condition of the fund which came into his possession by virtue of his trust, was compelled to interpose a defense to the suit ; but, the decree having been in favor of the stockholders, establishing their lien thereon, the costs and disbursements of the lower court will be charged upon the decedent's estate :  *Dunham* v. *Siglin*, 39 Or. 291 (64 Pac. 661). The decree having been modified, however, the costs and disbursements in this court will be deducted from the sum of $1,177.12, so impressed with said lien, and, after paying the same, Hughes, as administrator, will deposit the remainder with the clerk of the trial court, who will distribute the same to the persons entitled thereto in accordance with the provisions of the decree herein.

MODIFIED.

ON MOTIONS TO ALLOW ATTORNEY FEES AND TO TAX COSTS OF LOWER COURT AGAINST THE FUND.

Petitions having been filed by the respective parties for an allowance of attorney's fees, and by the appellant for the taxation of the costs of the lower court against the stockholders' fund in his hands, upon consideration thereof the costs and disbursements of the respective parties in each court will be paid by the administrator from said fund, as allowed and taxed in the respective courts, and he will deposit the remainder with the clerk of the court below, to be distributed to those who may prove title thereto.

5.   The question of attorney's fees not having been in issue in the lower court, will be remanded for such proceedings and allowance as that court may consider proper and just.        Modified.

Decided 7 October, 1901.

On Motion to Retax Costs.

Mr. Justice Moore delivered the opinion.

This is a motion to retax costs.   The appellant, having been allowed costs, filed a bill therefor, in which he demanded, *inter alia*, for printing the abstract, twenty-six pages, $26 ;   brief, forty-eight pages, $48 ;   stenographer's fees for transcribing testimony, $40 ;   and for preparing a petition for rehearing, $4.00.   The respondent objected to these items, and alleged that the abstract contained only twenty-five, and the brief forty-seven, pages, including covers ;   that a reasonable charge for printing the same did not exceed seventy-five cents per page ;   and that the stenographer's fees did not constitute a disbursement which the appellant was entitled to recover.   The appellant thereupon filed an amended verified statement, specifically denying these allegations, and for a further answer alleged that he was compelled to serve and file a printed abstract and brief, containing twenty-six and forty-eight pages, respectively, including covers, for printing which an account of $74 was set out; that the cause was tried before the court, stenographic notes being taken of the testimony, and a decree rendered without any transcription of such notes, but, an appeal having been taken, it became necessary to transcribe the testimony for use in the supreme court, for which service he was compelled to pay a stenographer the sum of $40 ;   that after the decision of the cause on appeal he prepared a petition for rehearing, and, not

having sufficient time to print the same, so as to present it before an adjournment of the court, he had some copies thereof made by a stenographer, for which he was compelled to pay the sum of $4.00. The clerk disallowed the latter sum, and also the sum of $1.00, or one half the claim for the cover of the abstract, but taxed the other items as claimed, whereupon the respondent moved to retax the items of the cost bill to which he objected.

6. His motion therefore notifies the appellant that he intends to rely upon certain affidavits, annexed thereto, to the effect that the reasonable cost of publishing the abstract and brief is sixty-five cents per page for cash, and seventy-five cents on credit. The appellant moves to strike such affidavits from the files, on the ground that they were filed after the disbursements had been taxed, and that the testimony therein contained was not submitted to or considered by the clerk. In *Crawford* v. *Abraham*, 2 Or. 163, a judgment of nonsuit having been rendered in the court below, the defendants filed a cost bill, and supplemented it with certain affidavits, showing the necessity of the several items thereof. The court, in construing Section 546 of the General Laws of Oregon, as compiled by Matthew P. Deady and La Fayette Lane (Section 556 of Hill's Ann. Laws), which provided that disbursements should be taxed in accordance with a verified statement thereof, unless objections thereto were filed, held that the showing of the necessity for an item of disbursement should be in the form of an amended verified statement, and that no other affidavits would be allowed. Mr. Justice WILSON, in speaking of the statement and the office performed by it, said : "The verification and its amendment will constitute the proofs. It is enough to call an affiant's attention to the particular items objected to, and then common honesty, or the fear

of committing perjury, will prompt that person to make a true showing." The legislative assembly on February 20, 1891, amended section 547 of said Code (which is Section 557 of Hill's Ann. Laws) by providing that, in reviewing the taxation of costs, the court or judge might examine any affidavits which either party may have filed in support of or against any item claimed in the cost bill : Laws, 1891, p. 114, § 1.

7.   Whether the affidavits, which are annexed to the motion, should have been filed before the clerk taxed the costs, it is not necessary to inquire; for, in our judgment, the amended verified statement is insufficient to controvert the objections interposed to the cost bill, so far as they relate to the reasonable cost of printing the abstract and brief, and for this reason said affidavits will not be considered.   It is not alleged in the amended verified statement that the appellant had agreed to pay the sum of $74 for printing the abstract and brief, or that said sum was a reasonable compensation therefor.   It is the duty of the clerk, in taxing costs, to allow the prevailing party the actual cost of printing his abstract or brief, not exceeding $1.00 per page, including cover, when printed in pica, and $1.25 a page when printed in small pica :  Rule 23, Sup. Ct. (35 Or. 603).   The appellant does not allege in the amended verified statement the actual cost of printing the abstract and brief, as required by this rule and by the statute and decisions of this court.   It would appear that he has treated the cost bill as a complaint, the objections thereto as an answer, and the amended verified statement as a reply, expecting to controvert the respondent's testimony before the clerk upon the issue of the reasonableness of the charge for printing.   Whatever may be said in respect to the time of introducing proof upon the issue of the reasonable-

ness of the item of the cost bill objected to, the statute nowhere requires the filing of any affidavits in support of or opposed to such item. The effect of the amendment of the statute adverted to is to modify the opinion in *Crawford* v. *Abraham,* 2 Or. 163, thereby requiring such affidavits to be considered when properly filed. When the objections to the cost bill were filed, the burden of showing the reasonableness of the charges of the several items controverted thereby was imposed upon the appellant, and this duty could be discharged only by filing an amended verified statement, making a *prima facie* case in his behalf. The appellant having failed to comply with this requirement, his amended verified statement admits by its silence that the reasonable charge for such printing is only seventy-five cents per page (*Cross* v. *Chichester*, 4 Or. 114), which sum is allowed for the abstract and brief, containing twenty-five and forty-eight pages, respectively.

8. The stenographer's notes of the testimony not having been transcribed when the decree was rendered in the lower court, it was necessary that a transcript thereof should be made, in order that the cause might be tried *de novo* in this court; and, it appearing from the amended verified statement that the sum of $40 paid therefor is reasonable, it is allowed.

9. The sum of $4.00, however, paid for preparing a petition for rehearing, is disallowed. The clerical work of preparing such a petition might have been done by appellant's counsel, in which case he would be no more entitled to compensation therefor than in preparing a pleading.

The disbursements will therefore be retaxed in accordance with this opinion.          COSTS RETAXED.