Submitted on briefs June 6, affirmed July 1, 1919.

## REHFUSS *v.* WEEKS.*

### (182 Pac. 137.)

**Pleading—Election Between Defenses—Necessity.**

1. A defendant can be required to elect upon which of several defenses he will rely only where the facts stated as such defenses are so inconsistent that, if the truth of one defense be admitted, it would necessarily destroy the other.

**Pleading—Election Between Defenses—Inconsistent Statements.**

2. In an action for damages for distributing water on plaintiff's land by a drainage ditch, no election was required where defendant pleaded a natural outlet and also that such natural outlet was changed and lowered by the construction of the ditch acquiesced in for more than 20 years.

**Trial—Instructions—Requests.**

3. In an action for damages to land by distribution of water through a drainage ditch, a requested instruction that water cannot be discharged on the property of another without his consent and to his injury in greater quantities than that in which it would naturally flow, *held* covered by other instructions given.

**Waters and Watercourses—Drainage—Action for Damages—Instructions.**

4. In an action for damages to land by distribution of water through a drainage ditch, an instruction as to changing a natural watercourse and restoring the same to its original channel within the confines of defendant's own land *held* properly refused as inapplicable to the issues.

**Waters and Watercourses—Diversion or Change of Natural Streams—Liability.**

5. When a small natural stream is straightened and deepened so as to confine the waters thereof within a smaller compass, thereby increasing the tillable land, in such a manner as not to increase the amount of water, or change the place of discharge on a neighbor's land, no cause of action arises.

**Waters and Watercourses—Action for Injuries—Instructions—Surface Water.**

6. In an action for damages to land by distribution of water from a drainage ditch, an instruction that, if defendant cast water from his property permeating the surrounding soil and percolating into

*Authorities passing on the question of right of riparian owner to restore stream which has changed its course by natural causes to old channel are collated in notes in 33 L. R. A. (N. S.) 804; L. R. A. 1916F, 407.                                            REPORTER.

plaintiff's land to his injury, verdict should be for plaintiff, was properly refused as ignoring the rule as to surface water.

[As to instances of percolating waters, see note in 67 **Am. St. Rep.** 671.]

Waters and Watercourses—Surface Water—Drainage.

7. The owner of upper lands is not prohibited by the rule as to surface water from cultivating his lands or draining them by artificial ditches, though surface water is thereby precipitated more rapidly upon the lands of the adjacent owner below, provided he does not cause water to flow on such lands, which, but for the artificial ditches, would have flowed in a different direction, and provided he acts with a prudent regard for the adjacent owner's interest.

From Marion: PERCY R. KELLY, Judge.

In Banc.

Plaintiff brought this action to recover damages in the sum of $475 of defendant for distributing water on plaintiff's land by means of a drainage ditch and tiling. The cause was tried before the court and a jury resulting in a verdict for defendant. From the consequent judgment plaintiff appeals.

After describing the premises of plaintiff and those of defendant, plaintiff asserted in his initiatory pleading in substance: That from time immemorial there has been a natural basin about 800 feet in length and 250 to 300 feet in width on the property of defendant. During the rainy seasons of the year such basin fills with water; that prior to January 4, 1913, the defendant constructed a ditch varying from a few inches to nine feet six inches in depth, and has ever since maintained a drainage tile therein, across a portion of his land and the property adjoining him on the north; the ditch extending to and across a county road for the purpose of draining such basin, and that the waters which accumulate in said basin pass through this tile, and are emptied on the surface of the ground at the "drainage outlet" near the west line of plaintiff's property causing an excess of water upon plaintiff's

land, which lies between the drainage outlet and Clag-gett Creek, the only outlet for the water which flows through the drainage tile over plaintiff's land thereby damaging plaintiff's land and orchard.

Defendant by his answer denies the alleged trespass and asserts that the physical configuration of said basin and surrounding country is such that the basin drains its water in a natural course through a natural depression over the land intervening between plaintiff and defendant, crossing the public thoroughfare twice and then across the land of plaintiff until such drainage empties into Claggett Creek; that in addition to the natural depression in the earth's surface extending from the basin to the creek, a ditch from one to six feet deep was constructed in ancient times for the purpose of more expeditiously draining such basin, and a large portion of country through its accustomed outlet; that in 1911, in order to hasten the drainage of the basin, defendant lowered the depth of the ditch on an average of about two feet across a portion of his land and the adjoining premises of one Kurtz, which would not increase the accumulation of water in the basin, nor alter the accustomed manner in which the basin drained its waters, nor increase the amount of water which passed over plaintiff's land by reason of the drainage from said basin or surrounding country; that for a period of more than twenty years the predecessors in interest and estate of plaintiff have acquiesced in the course the drainage of said basin has taken, and the artificial ditch dug to facilitate the drainage thereof; that plaintiff's lands are considerably lower than the bed of the basin, and in the state of nature was and is now by an artificial ditch and tile drain over said accustomed route, subject to the drain of the land lying above plaintiff's premises and said

natural basin; and a portion of plaintiff's land is marshy and wet during a considerable part of the year on account of percolating waters draining from higher lands immediately to the south.

Defendant also pleaded that plaintiff in disregard of the proprietary rights of the defendant obstructed the natural drain of the water flowing from the basin on the lands of defendant so that the same was held back upon defendant's land to his damage in the sum of $250. At the opening of the trial, plaintiff submitted to the court a motion "to require the defendant to elect as to which defense and by way of counterclaim he will rely upon, to wit, a right by nature as pleaded in * * defendant's further and separate answer, or a right by prescription," as pleaded therein.

The denial of such motion is assigned as error.

AFFIRMED.

For appellant there was a brief submitted by *Mr. F. H. Reeves.*

For respondent there was a brief prepared and submitted by *Messrs. McNary & McNary, Mr. E. M. Page* and *Mr. Grant Corby.*

BEAN, J.—1. A defendant can be required to elect on which of several defenses he will rely only where the facts stated as such defenses are so inconsistent that if the truth of one defense be admitted, it will necessarily disprove the other: *Snodgrass* v. *Andross,* 19 Or. 236 (23 Pac. 969); *Farmers' National Bank* v. *Hunter,* 35 Or. 188 (57 Pac. 424); *Fleishman* v. *Meyer,* 46 Or. 267 (80 Pac. 209); *Susznik* v. *Alger Logging Co.,* 76 Or. 189 (147 Pac. 922, Ann. Cas. 1917C, 700).

This rule of law is well settled in this state and it only remains to apply it. It will be noticed that the defendant pleaded in effect that from time immemorial there existed a natural outlet to the basin referred to, and that in ancient times a ditch was constructed along the natural depression which served as a drain for a large portion of country lying on either side thereof; that the predecessors in interest of plaintiff have acquiesced in the manner of so draining the surrounding lands for more than twenty years.

2. It might be true that there was such a natural outlet of the basin in question. It might also be true that the natural depression or outlet was changed and lowered by the construction of the ditch as alleged; therefore, it does not follow that if one state of facts pleaded by defendant is true, the other is false. We see no inconsistency in the two statements. The ruling of the trial court denying the motion to elect was correct.

Testimony was introduced upon the respective sides tending in a measure, at least, to support the contention of the respective parties. At the close of the evidence, plaintiff requested the court to instruct the jury as follows:

"It is a rule of law that water cannot be discharged by one person upon the property of another, without his consent and to his injury by artificial means, in greater quantities than that in which it would naturally flow. Therefore, if you should find that the defendant therein has, by artificial means, increased the flow of water over that which would naturally flow over the property of the plaintiff, to his injury and without his consent, you should find for the plaintiff."

The plaintiff complains of the refusal of the trial court to so charge the jury. The trial court plainly

and in detail stated the issues to the jury, and instructed them to determine whether or not the course in which the waters were directed by defendant was a natural course, and charged in substance as follows:

"The position of the defendant is that there was a natural watercourse over the property in question through which the drainage which is shown to have taken place was caused to flow; and it is the law, gentlemen of the jury, that one upon whose property there is such a basin containing water of this character may drain the same through a natural watercourse, if one is there, and may, in the course of the drainage, reasonably increase or accelerate the flow of the watercourse, but cannot rightfully increase the quantity or amount of the water within the natural basin in making the drainage.

"One may not by artificial means collect water upon his property and discharge it upon the property of another to his injury; nor may one by artificial means other than through a natural watercourse cause water to flow out and upon the lands of another to the other's injury; and if you find from a consideration and comparison of the evidence in the case, that there was not a natural watercourse over this property in which the water has been caused to flow by the defendant, and you find that the flowage of water thus caused by the defendant to have been the cause of damage, * * to the plaintiff, as alleged in the complaint, your verdict should be for the plaintiff.

"You are instructed that defendant, in leveling or improving his property, had a legal right to cause an accumulation or diversion of surface water with the corresponding right to cause said water to flow down on the land of plaintiff, without liability, providing that the surface water collected in the basin on defendant's real property followed the way or course provided by nature and any increase in the flowage of such way or course provided by nature, if such increase has been shown, was a reasonable increase."

Over the objection and exception of plaintiff, the court in effect charged the jury that, as a matter of law, defendant Weeks had a right to expel surface waters which naturally accumulated on his premises, upon the land of an adjoining proprietor without subjecting himself to liability, but in no case can a land owner collect the surplus waters upon his lands into a basin by artificial methods and then discharge the water through a ditch upon the lands of another unless such lands form the natural drainage of such waters.

3. It seems that the requested instruction was thoroughly covered and explained by the charge as given by the court to the jury, and that the case was properly submitted to the jury; therefore, the plaintiff has no reason to complain in this respect.

4. Plaintiff requested the court to charge the jury as to the law relating to the defendant's changing the natural course of the water from one place to another and restoring the same to its original channel within the confines of his own land, and assigns error of the court in refusing to instruct so. We find no issue raised in the case to which such an instruction would apply. The plaintiff complains of the defendant's digging a ditch and thereby causing water to flow to a place from which it will percolate or flow to his land. He makes no complaint of changing the course of a natural stream. There was no error in refusing the request. The charge to the jury taken as a whole, we think is correct. It is entirely fair to plaintiff.

5. It is a matter of common knowledge that small natural streams are straightened and deepened so as to confine the waters thereof within a smaller compass, thereby increasing the tillable land. When this is

done in a manner so as not to increase the amount, or change the place of the discharge of such water on to a neighbor's land, that neighbor has no cause for complaint.

6. Plaintiff also requested the court to instruct that—

If they found "that the defendant did cast water from his property which did permeate the surrounding soil and percolate through the same into and permanently injuring the land of the plaintiff, you should find for the plaintiff."

7. The requested instruction ignores the rule as to surface water. A portion of the water in question appears to come within such designation. The defendant as a land owner, had the right to turn or expel upon the land of an adjacent owner, surface water that would naturally flow there, and in such quantities as would naturally drain in such direction, without liability for damages: *Whitney* v. *Willamette Ry. Co.,* 23 Or. 188 (31 Pac. 472); *Davis* v. *Fry,* 14 Okl. 340 (78 Pac. 180, 2 Ann. Cas. 193, 69 L. R. A. 460); 5 M. A. L., § 469, p. 354. The owner of upper lands is not prohibited by the rule from cultivating his lands or draining them by artificial ditches, though surface water is thereby precipitated more rapidly upon the lands of the adjacent owner below, provided he does not cause water to flow on such lands which, but for the artificial ditches, would have flowed in a different direction, and provided he acts with a prudent regard for the interests of such adjacent owner: 30 Am. & Eng. Enc. of Law (2 ed.), 337; Angell on Watercourses (6 ed.), p. 122 et seq.; *Anderson* v. *Henderson,* 124 Ill. 164, 170 (16 N. E. 232); *Wood* v. *Moulton,* 146 Cal. 317 (80 Pac. 92); *Shaw* v. *Ward,* 131 Wis. 646 (111 N. W. 671, 11

Ann. Cas. 1139). In the latter report the syllabus is as follows:

"A land owner has the right to protect his premises from surface waters by causing the same to flow by the natural and necessary course to adjoining lands, subject to the limitation that he cannot rightfully collect surface waters on his premises in a reservoir and then discharge the same on to the land of another to his injury.

"A person on whose land surface water coming from his own and other lands collects in a natural basin or depression and there remains except in seasons of drought, has the legal right to rid his land of the water by causing the same, by such means as may be reasonably necessary, to flow in the natural course of drainage on to adjoining lands, though the water may from thence, by natural or artificial means for which he is not responsible, reach and spread out over the lands of others. In such a case the land owner effecting the drainage of his land by means of a ditch is only in the exercise of the right of every person to defend his premises against surface water, and for consequential damages to other land owners the latter have no remedy against the former."

Plaintiff complains of instructions in regard to the defendant's counterclaim for damages. In view of the fact that no damages were awarded the defendant, it is unnecessary to consider this question. Other errors are assigned which we have examined and find to be without merit.

The question involved in this case was largely one of fact. It was carefully and plainly submitted to the jury by the trial court according to the principles of law. Finding no error in the record, the judgment of the lower court is affirmed.                    AFFIRMED.