Argued June 27; modified July 30; former opinion modified and
rehearing denied September 24, 1935

# JANSEN *v.* TYLER ET AL.

### (47 P. (2d) 969, 49 P. (2d) 372)

*W. C. Bristol* and *E. R. Harvey*, both of Portland, on the brief, for appellant.

*A. E. Clark*, of Portland (Clark & Clark, Blaine B. Coles, and R. R. Bullivant, all of Portland, on the brief), for respondents.

Plaintiff appeals from a decree of the circuit court adjudging that plaintiff recover out of the funds and property in the hands of the Security Savings and Trust Company, as trustee, under and by virtue of that certain trust agreement dated June 20, 1931, wherein William Anson Tyler, Portland, Oregon, was trustor, and Security Savings and Trust Company was trustee, and the amendments and supplements thereto dated June 24, 1931, the sum of $1,335, with interest thereon at the rate of 6 per cent per annum from January 2, 1930, to be paid out of said trust funds and property, and further decreeing that plaintiff has no right, title, interest or claim upon any of the policies of insurance assigned to or placed in said trust or in the proceeds thereof which came into the possession and custody of said Security Savings and Trust Company, the trustee under said instruments of trust, except to the extent decreed, as mentioned above.

The case is stated about as follows: This suit in equity was instituted by Harrie A. Jansen, as receiver of the Municipal Reserve and Bond Company, for an accounting and the recovery of the amount of the late W. A. Tyler's misappropriation of its funds in violation of his fiduciary capacity and to declare a trust in favor

of said corporation in the secret fund created by said Tyler on or about June 20, 1931, and held by defendant Security Savings and Trust Company as trustee. This trust fund exceeds the sum of $305,000 and consists of the proceeds from insurance policies upon Tyler's life. The trust was one created by Tyler, while insolvent, over which he retained in himself full control and power of revocation. The beneficiaries under this secret trust are Susan B. Tyler, the wife, and Sara Bennett Tyler, the daughter, of the creator of the trust. Tyler died July 13, 1931, within a month of the date of the establishment of the secret trust, and, aside from the trust fund, his estate was insolvent. Answers were filed by defendant Security Savings and Trust Company, Susan B. Tyler and Sara Bennett Tyler, by Susan B. Tyler, her guardian. No appearances were entered by the other defendants. The decree of $1,335 was for premiums paid by Municipal Reserve and Bond Company upon two insurance policies on Tyler's life, which policies were transferred into the secret trust.

There was introduced during the trial a vast amount of documentary evidence, and numerous matters of fact relating thereto were covered by stipulation. Weber A. Hattrem and William Anson Tyler, now deceased, were jointly indicted July 10, 1931, for embezzlement on February 14, 1929, of assets of the Municipal Reserve and Bond Company of the aggregate value of approximately $100,000. Mr. Tyler committed suicide soon afterwards; Hattrem was convicted and sentenced to eight years in the state penitentiary. See *State v. Hattrem,* 140 Or. 371 (13 P. (2d) 618).

On February 14, 1929, William Anson Tyler acquired all of the "Class B" voting stock of the Municipal Reserve and Bond Company from W. A. Hattrem, and, in payment therefor, Tyler delivered to the latter

cash and other liquid assets of the Municipal Reserve and Bond Company to the value of $95,825. Tyler gave to the company his unsecured note for that amount. The stipulation mentioned relates to this transaction. Mr. Jansen, the receiver, as a witness, speaking of this transaction, said: "Now I figured out that Mr. Tyler probably was a goat to Mr. Hattrem's activities." Through this transaction Tyler immediately went into control of the Municipal Reserve and Bond Company, and thereafter controlled and dictated its affairs. He dominated the board of directors, had himself elected president and general manager, and thoroughly represented the corporation.

On February 28, 1929, Tyler, then being in control of the affairs of the corporation, acting as president, attempted to wipe out his obligation represented by his note of February 14, 1929, for $95,825, by cancelling the same through the transfer to the company of valueless properties. It is stipulated in the record that the properties which were turned in to Municipal Reserve and Bond Company on or about February 29, 1929, had no value. Defendant Susan B. Tyler joined with her husband in transferring the valueless equities to the company.

March 11, 1929, Tyler took, and charged to the company, his expense amounting to $483.68, of the funds of the Municipal Reserve and Bond Company to cover his own and Davidson's expenses of a trip to Texas, where they went to look after their own and Susan B. Tyler's property, the company having no interest whatever in Texas. May 1, 1929, Tyler transferred 984 shares of the voting stock of the company to defendant Susan B. Tyler and retained one share for himself. On June 11, 1929, Tyler credited himself with the payment of $2,000 upon a nonexisting mortgage supposed to have been

upon the Arch Cape Park properties, and the journal explanation is as follows: "The above entry made to set up amount paid on this mortgage by W. A. Tyler and crediting his account with it." Tyler overdrew his salary account at various times, and at one time gave a note to the company for $5,000, which was credited to his salary account and never paid, and, among the properties appropriated to himself by Tyler, at the time he severed his connection with the corporation, were the worthless note of George W. Davidson, his associate, for $6,696.67; Oregon Linen Mills obligation of $1,000; Town of Browning bond for $1,000; Village of Paul, Idaho, 6 per cent bond $400, and the Josephine Apartments. Tyler sold out his interest in the company May 13, 1930, to Horal and Blanchard. On or about July 13, 1930, Tyler, who continued to act for the corporation, appropriated $1,500 in commissions earned by the company in Magnus & Company sale. On December 5, 1930, suit for a receivership of the Municipal Reserve and Bond Company was instituted in the circuit court for Multnomah county. On the same date Tyler, upon demand, restored to the corporation the major portion of the assets abstracted on or about May 13, 1930, retaining, however, the Akin note, the office furniture and fixtures, and the furniture in the Josephine Apartments, the three properties not covered by stipulation.

On December 15, 1930, Tyler gave his note to the Municipal Reserve and Bond Company for $4,612.23, the purpose of which is not shown. On December 24, 1930, Jansen, the plaintiff, was appointed receiver of the Municipal Reserve and Bond Company. June 20, 1931, William Anson Tyler executed a trust agreement with defendant Securities Savings and Trust Company and transferred to the trustee several policies of insurance. March 1, 1932, in the case of *Security Savings*

*and Trust Company, trustee, v. Susan B. Tyler and Sara Bennett Tyler,* a decree was entered authorizing payment from the trust fund of the sum of $25,000 in settlement of the government's claim for income taxes for the year 1924 against the estate of William Anson Tyler, Susan B. Tyler and Sara Bennett Tyler, by her guardian ad litem, having consented thereto.

It is alleged in the complaint, and not denied by the answers, that, as appears by the inventory and appraisement filed in the matter of the estate of W. A. Tyler, deceased, his estate was appraised at $10,809.38, that exclusive of the claim of the government of the United States there were known claims against the estate in excess of $150,000, and the estate was hopelessly insolvent.

The books of the Municipal Reserve and Bond Company, from a bookkeeping standpoint, were well kept. In a bookkeeping sense the entries were correctly placed from the information furnished the bookkeeper by Tyler, although not sustained in fact. Mrs. M. J. Woodworth, treasurer of the company, was its bookkeeper and was a witness in the case and explained many transactions.

■ The complaint, as filed, seemed to proceed on two theories which are not wholly consistent. Some parts alleged that all of the insurance policies and their proceeds rightfully constituted a part of the estate of W. A. Tyler, while other parts alleged clearly that they were the property of the Municipal Reserve and Bond Company for the reason that all premiums thereon had been paid by funds embezzled from the company. The court required plaintiff to elect upon which theory he would proceed, and plaintiff, reserving an exception, elected to proceed upon the theory that the proceeds of the policies were the property of Munic-

ipal Reserve and Bond Company by reason of its having paid the premiums thereon, and all of the facts bearing upon the case, and it would seem many more, were delineated in the testimony. We find no error in the court's ruling in this respect. Counsel for respondent, in support of the ruling, cite: *Harvey v. Southern Pac. Co.*, 46 Or. 505 (80 P. 1061); *Whitten v. Griswold*, 60 Or. 318 (118 P. 1018); *Rehfuss v. Weeks*, 93 Or. 25 (182 P. 137); *Johnson v. Homestead-Iron Dyke Mines Co.*, 98 Or. 318 (193 P. 1036); 49 C. J. 742.

■ In order for plaintiff to recover, it was necessary for him to show that premiums on the policies of life insurance were paid from the funds of the Municipal Reserve and Bond Company, which had been appropriated wrongfully by William Anson Tyler, deceased. The trial court found that the plaintiff had not proved the case set forth in his complaint, except with reference to policies No. 649852 and No. 649853 in the New England Mutual Life Insurance Company. The trial court decreed that the premiums paid on these policies by the Municipal Reserve and Bond Company amounting to $1,335 should be restored and paid to the receiver of the company. We have carefully read all of the testimony in the case and are unable to find evidence to trace the funds of the Municipal Reserve and Bond Company to the payment of the premiums on the several policies of insurance mentioned in the record, except the two mentioned above. The premium payments on the New England Mutual Life Insurance Company policies No. 649852 and No. 649853, one originally payable to Municipal Reserve and Bond Company and one to Mr. Davidson, were paid by Mr. Tyler, except the first three quarterly premiums.

The New England Mutual Life Insurance Company policy No. 649852 was dated July 2, 1929, insuring W. A.

Tyler. The original beneficiary was the Municipal Reserve and Bond Company; Susan B. Tyler was substituted as beneficiary July 10, 1931, the Security Savings and Trust Company, as trustee, being substituted as beneficiary later. The first quarterly premium was paid September 6, 1929, by check in the sum of $353, signed by the Municipal Reserve and Bond Company, W. A. Tyler, president, M. J. Woodworth, treasurer, the proceeds of which were distributed as follows:

| | |
|---|---|
| On the policy on the life of Tyler | $222.50 |
| On Davidson policy No. 649850 | 129.00 |
| Interest | 1.50 |

The second quarterly premium was paid on December 30, 1929, and was included in a check for $356.89, signed by the Municipal Reserve and Bond Company by W. A. Tyler, president, and M. J. Woodworth, treasurer, the proceeds of which were distributed as follows:

| | |
|---|---|
| On the policy on the life of Tyler | $220.00 |
| On Davidson policy No. 649850 | 129.00 |
| Interest | 7.89 |

Third quarterly premium was included in the following checks:

Check for $218.94, dated January 31, 1930
Check for $250.00, dated March 19, 1930
Check for $252.75, dated May 6, 1930,

making a total of $721.69, as shown by plaintiff's exhibits 17, 18 and 19, the proceeds of these checks being distributed as follows:

| | |
|---|---|
| On policy No. 649852 | $220.00 |
| On policy No. 649853 | 220.00 |
| On Davidson policy No. 649851 | 129.00 |
| On Davidson policy No. 649850 | 129.00 |
| To interest | 23.69 |

The fourth quarterly premium on policy No. 649852, covered by a note which included premiums on other policies, was paid by two personal checks of W. A. Tyler, one dated October 10, 1930, for $500, and the other dated October 25, 1930, for $244.98, making a total of $744.98, as explained by the letter of the insurance company of October 9, 1930. The note was for $729.42, and at the time these checks were given interest in the sum of $15.56 had accrued. The proceeds of the checks were applied to the payment of premiums on the following policies: Nos. 649852, 649853, 650039 and 650040, and the Davidson policy of 649851.

The fifth quarterly premium was paid as follows:

Policy dividend ............................................. $203.75
Cash ........................................................... 18.75

   Total ..................................................... $222.50

The cash payment was included in two checks made by Tyler, both dated July 11, 1930, one for $56.25 and one for $19.75, the proceeds of which were applied as follows:

On policy No. 649852 ................................. $18.75
On policy No. 649853 ................................. 18.75
On policy No. 650039 ................................. 18.75
On policy No. 650040 ................................. 18.75
Davidson policy No. 659851 ..................... 1.00

   Total ................................................. $76.00

The sixth quarterly premium due October 2, 1930, in the sum of $226.60, which included some interest, was paid by two personal Tyler checks given in January, 1931, as follows:

Check dated January 12, 1931 ...............$ 530.00
Check dated January 15, 1931 ............... 500.00

   Total ..................................................$1,030.00

The proceeds were distributed in payment of the sixth quarterly premium on policies Nos. 649852, 649853, 650039 and 650040, and the sum of $123.60 on the Davidson policy No. 649851, as explained by the letter of the insurance company dated January 6, 1931.

The seventh and eighth quarterly premiums and the full quarterly premium for the year beginning July 2, 1931, were paid in the following manner: The policy was carried, according to the letter of January 6, 1931, until a policy loan was made on or about June 15, 1931, at which time a policy loan of $1,295 was made. At that time there was an accrued dividend on the policy of $210. The seventh and eighth quarterly premiums, with interest, and the full annual premium for the year beginning July 2, 1931, amounted to $1,354.90, which was paid out of the loan and policy dividend, leaving a credit balance to Tyler of $150.10 which was not taken out. Settlement was made as follows:

Face of policy _____ $25,000.00
Settlement received _____$23,903.49
Deductions _____ 1,096.51
                                _____ $25,000.00

In regard to policy No. 649853, on the life of W. A. Tyler, originally payable to George W. Davidson, as beneficiary, Mrs. Tyler was substituted as beneficiary October 16, 1930, and the Security Savings and Trust Company, as trustee for Susan B. Tyler and Sara Bennett Tyler, was later substituted as beneficiary. As stated in respondent's brief, and we think correctly, the history of all premium payments is substantially identical with that of policy No. 649852. The first, second and third quarterly premiums were paid with the money of the company, making a total of $662.50.

The receiver and Mrs. Woodworth, former treasurer of the company and bookkeeper, who was assisting the receiver, and W. L. Coleman, all of whom are accountants, made a thorough and searching examination of the records and books of the company and testified to the effect that there had not been paid by the company or out of its funds directly or indirectly any premiums upon any insurance policies upon the life of Mr. Tyler, except the three quarterly premiums on policies No. 649852 and No. 649853, of the New England Mutual Life Insurance Company.

We think the finding of the circuit court in regard to the payment of these three quarterly premium payments on the two policies mentioned is correct. The question recurs as to what decree should be entered on the facts so found. We doubt if this question was fairly submitted to the trial court. Plaintiff assigns that the court erred in limiting plaintiff's recovery to the sum of $1,335, and interest, and in failing to enter a decree in favor of plaintiff for all moneys owing by William Anson Tyler to the Municipal Reserve and Bond Company, as prayed for in plaintiff's complaint, and in failing to declare a trust in favor of plaintiff therefor against the trust fund held by the defendant Security Savings and Trust Company.

■ Where a fiduciary embezzles funds of his cestui que trust and uses same in building an estate in life insurance, equity will impress a trust in favor of the cestui que trust in the proceeds of such insurance for moneys so embezzled: *Truelsch v. Miller*, 186 Wis. 239 (202 N. W. 352, 38 A. L. R. 914); *Holmes v. Gilman*, 138 N. Y. 369 (34 N. E. 205, 20 L. R. A. 566, 34 Am. St. Rep. 933); *Massachusetts Bonding & Insurance Co. v. Josselyn*, 224 Mich. 159 (194 N. W. 548); *Dayton v. H. B. Claflin Co.*, 19 App. Div. 120 (45 N. Y. S. 1005);

65 C. J. 971 § 895. In 65 C. J. 970 § 891, it is stated that if the cestui que trust can show that the money has in fact gone into such property, trust money can be followed into any other form of property into which it has been converted by the trustee, for it is no longer the law that money can not be traced because it has no earmark. We find in section 893 that where the cestui que trust elects to take the product of trust property as his own he is generally not limited to the value of the original trust property, but is entitled to all fruits, gains, or profits of the new property, except in so far as the increase in value is due to labor or expenditure of the trustee. The rule is laid down in section 895 that where trust funds have been misapplied to pay premiums on a life insurance policy they may be followed into the policy, and it is generally held, in accordance with the rule, that the cestui que trust is entitled to the benefit of any gains or profits of property into which trust property has gone, that the cestui que trust's recovery is not limited to the amount of the misapplied funds, but he is entitled to the proceeds of the policy in the proportion that the payments made from the trust funds bore to the total premiums paid, and the cestui que trust may recover the entire proceeds where all the premiums have been paid with trust funds.

The New England Mutual Life Insurance Company policies No. 649852 and No. 649853 were dated July 2, 1929. W. A. Tyler died July 13, 1931. Therefore, applying the rule mentioned, the plaintiff should recover out of the funds and property in the hands of the Security Savings and Trust Company, as trustee, under and by virtue of that certain trust agreement, dated June 20, 1931, wherein William Anson Tyler, of Portland, Oregon, was trustor, and Security Savings

and Trust Company was trustee, and the amendment and supplement thereto, bearing date June 24, 1931, the portion of policies Nos. 649852 and 649853, each for the sum of $25,000, or a total of $50,000, that the proportional part of premiums paid by the Municipal Reserve and Bond Company bears to the total amount of premiums paid on the two policies, as above stated, which amount is $17,213, with interest thereon at the rate of 6 per cent per annum from the date of the payment of the policies, which date may be fixed by the circuit court. This computation applies to the two policy dividends according to the then interest of each party in the policies.

The rule, as stated, is sanctioned in the annotation to *Truelsch v. Miller,* supra, in 38 A. L. R. 914, at page 930, in the following language:

"The general rule seems to be that where a person has embezzled funds and used them for the payment of premiums for insurance on his life, a trust is created in favor of the person from whom they were embezzled, and that the latter is entitled to such proportion of the total insurance as the amount of premiums which have been paid from the embezzled funds bears to the total amount of premiums paid."

■ This rule was followed in *Truelsch v. Miller,* supra, wherein it was held that where funds of an employer had been embezzled and used in the payment of two-thirds of the premiums on the policy on the employee's life, the employer was entitled to have impressed on the policy and its proceeds a trust for two-thirds of the amount of the policy. That case was much like the case in hand. There a trusted clerk in a bank embezzled over $4,000, and invested a portion thereof in paying premiums on a life insurance policy. Upon his peculations being discovered he com-

mitted suicide. It was there held, as between the clerk and the cestui que trust, the latter could pursue the funds into the new investment, and charge that investment with the trust, and that he may also assert and enforce the same right against third parties to whom the property has been transferred with knowledge of the trust, or who have paid no consideration for it, provided the identity of the trust fund can be established, that if the premiums were paid from funds stolen or embezzled from the cestui que trust, each policy became impressed with the trust in appellant's favor the instant each premium was paid.

In the opinion in the case of *Holmes v. Gilman,* supra (see Annot. 38 A. L. R. 933), policies aggregating $45,000 had been procured and maintained by misappropriating funds. The faithless partner had, by means of false entries in the books, converted over $220,000. It was argued by counsel for defendant that the funds used in the payment of the premiums were mingled with the property right of the wife, called her insurable interest in her husband's life, and that the policies were not wholly the result of the use of the misappropriated funds, and that the lien on the policies must be limited to the amount of the premiums paid with the funds wrongfully converted. This is similar to the holding of the trial court in the present case. In the Holmes case it was held that the wife had suffered no loss so long as the premiums were not paid by her, and that her property had not been used for any purpose, and that she must claim the policies subject to the means used by her husband to procure them and adopt his methods, and that the cestui que trust was entitled to follow the policies, at his option.

In *Vorlander v. Keyes,* 1 Fed. (2d) 67, cited in the Annot. in 38 A. L. R. 930, it appeared that Vorlander,

who was president of the bank and heavily indebted to it, had procured five policies on his life, one of which was in favor of his wife and the other four in favor of his four children. One half of the initial premium in each of these policies he paid with his own property and the other half of each premium with the funds of the bank, which he secretly misappropriated to that purpose. The second year's premium on each of these policies was the same amount as that of the first year, and he paid the second year's premium on each in January, 1920, with the funds of the bank, which he secretly misappropriated for that purpose. He died August 11, 1920. The result was that one-fourth of the premiums, which resulted in the proceeds of these policies, was paid by Vorlander with his own property, and three-fourths thereof he paid with the funds of the bank, which he misappropriated to those payments. The bank went into the hands of a receiver and the litigation resulted in a decision and decree of that court to the effect that the receiver was entitled to three-fourths and the beneficiaries to one-fourth, respectively, of the proceeds of the policies.

In *Massachusetts Bonding and Ins. Co. v. Josselyn,* supra (see Annot. 38 A. L. R. 931), it appeared that an attorney had used funds of estates of which he was administrator in part payment of premiums for insurance on his life. The court determined that the sums received on policies issued prior to his appointment as administrator should be prorated "in the proportion that the trust funds and private funds invested therein bore to each other". The appellate court affirmed the decree, saying:

"It clearly appears that the trust moneys were used in the payment of insurance premiums. Had such moneys been used in the purchase of real estate or

personal property of any kind, and title thereto taken in the name of Reeber, or his wife, or any other person except a bona fide purchaser for value, any such property, irrespective of whether it had increased or decreased in value, would have been the property of these estates. The contingency of gain would inure to their benefit just as the contingency of loss would have to be borne by them unless able to collect any deficiency from the trustee. In law they would be the equitable owners of any property in which their moneys had been invested. We are unable by any process or reasoning to apply any different rule to trust moneys used in the payment of life insurance premiums.   *   *   *''

In *Dayton v. H. B. Claflin Co.*, supra, cited in Annot. 38 A. L. R. 932, it appeared that the husband of the plaintiff had stolen funds of his employer, using part of them to procure two insurance policies on his life, one payable to his wife, and the other payable to the husband, and afterwards assigned by him to her. The action was originally brought by plaintiff against the insurance company to recover the amount of the policies, but after the commencement of the action an order was entered directing the amount of the policies to be deposited in court, awaiting the determination of the claims thereto; and defendant H. B. Claflin Company was substituted for the insurance company in the action. The defendant claimed that it was entitled to the whole insurance fund, and its claim was based substantially on the allegation that the insured had, for many years before his death, been one of the employees of the firm of H. B. Claflin Company, and of the defendant company; and that from time to time, since early in 1890, the insured had stolen and embezzled from the defendant company large sums of money, and that all the premiums on the two policies of insurance had been paid from the moneys so stolen. The referee decided that the whole

fund, $10,000, belonged to the defendant, subject to a lien thereon in favor of the plaintiff for the sum of $76, with interest from November 24, 1891, and that plaintiff had no other claim to any part of the fund. The court, on appeal, in reversing the judgment and ordering a new trial before a new referee, referred to the case of *Holmes v. Gilman,* supra, as authority for the proposition that where all the premiums have been paid from trust moneys the cestui que trust is entitled to the whole insurance fund, but the court distinguished that case from the one before it, and said:

"When, however, a part of the premiums only have been paid from trust moneys, a different question is presented. In such case, where the first premiums paid, when the policies had their legal inception, were made from the trust moneys, the inception of the policies and the legal title of the wife thereto would be infected with the improper use of trust moneys, and the rights of the wife would, from the very first, be subject and subordinate to the equities of the cestui que trust therein * * *" See *Shaler v. Trowbridge,* 28 N. J. Eq. 595.

The decisions upon this question are not all uniform, but we think the cases referred to above enunciate the rule according to the weight of authority.

Counsel for respondents contend, and it seems the trial court was of the opinion, that the general rule had no application to the case because the title to the policies vested in the defendant Susan B. Tyler and her daughter, free from any trust or encumbrance by virtue of section 46-514, Oregon Code 1930, which provides, in so far as material:

"When a policy of insurance is effected by any person on his own life or on another life in favor of some person other than himself, having an insurable interest therein, the lawful beneficiary thereof, other than himself or his legal representative, shall be en-

titled to its proceeds against the creditors and representatives of the person effecting the same; and the person to whom the policy of life insurance hereafter issued is made payable may maintain an action thereon in his own name; any policy of life insurance payable to a beneficiary other than the estate of the insured, having by its terms a cash surrender value available to the insured, shall be exempt from execution issued from any court in this state and shall, in the event of bankruptcy of such insured, be exempt from all demands in legal proceedings under such bankruptcy; provided, that, subject to the statute of limitations, the amount of any premiums for said insurance paid in fraud of creditors with interest thereon shall inure to their benefit from the proceeds of the policy, * * *.''

W. A. Tyler was a trustee of the Municipal Reserve and Bond Company and wrongfully received the property and money of the company, and such funds so received would not inure to his or his wife's benefit. The change in the form of the property or funds would not change the equities. The statute referred to is applicable to where a policy of insurance is effected by any person on his own life or the life of another with his own funds and not with the funds of another to which he is not entitled. The legislature, in its wisdom, has seen fit to be liberal with exemptions of insurance policies and homesteads, but it has not indicated by this statute, or any other, that it would protect funds wrongfully obtained by one and invested or placed in a secret trust for his wife or daughter or other relatives. It is beyond the power of the legislature to take the property of one person and give it to another by legislative fiat. Therefore, as between Tyler and his representatives and the cestui que trust, the latter may pursue the funds into the new investment and charge that investment with the trust.

The premiums paid with the money of the Municipal Reserve and Bond Company was not money belonging to Tyler, which he should have paid to his creditors or which he paid out in fraud of the rights of creditors, but was money that did not belong to him at all. Mrs. Tyler did not have any equitable claim to such funds. She paid nothing therefor and she lost nothing by the transaction.

The provisions of section 2347 of the statute of the state of Wisconsin, mentioned in the case of *Truelsch v. Miller*, supra, as shown in the annotations in 38 A. L. R. 924, in substance, are the same as our statute, section 46-514, Oregon Code 1930.

It appears that Tyler, for several years, was interested in various business projects. He was connected with the Astoria National Bank for a number of years, and after a time was vice president and then president. About 1924, with another, he took over a portion of the A. B. Hammond interests in the Columbia River Packers' Association, and they reorganized the company. A statement made up in 1927 shows Tyler's net worth at $1,100,000. In 1928 or 1929 the Astoria National Bank failed. Mr. Tyler was a large stockholder. Prior to the time it failed, in an effort to save it, he had taken out unbankable paper in a large sum and put in cash or notes secured by his own personal assets, principally the stock of the Columbia River Packers' Association. When the bank failed, he became subject to a 100 per cent assessment on his bank stock. In view of all of his business activities, it was of course difficult to trace the money of the Municipal Reserve and Bond Company to the payment of the premiums upon the policies. Those to which we have referred are shown by the checks of that company, as heretofore indicated, and, as we understand, are admitted. We have

not listed all of the policies held by Tyler and see no necessity therefor.

The decree of the trial court, modified as above indicated, is affirmed.

KELLY and BELT, JJ., not sitting.

---

Former opinion modified and petition for rehearing denied
September 24, 1935

ON PETITION FOR REHEARING
(49 P. (2d) 372)

BEAN, J. Respondents filed a petition for rehearing; appellant submits a motion to modify the opinion, which is in the nature of a petition for rehearing. It seems to be unquestioned that William Anson Tyler, deceased, while president of the Municipal Reserve and Bond Company, held a fiduciary position. It is admitted that he paid the first three premiums on the two policies of insurance in question with the funds of the corporation.

Respondents contend, with considerable zeal, that in order for plaintiff to recover it is necessary for it to show that the use of the funds by Tyler constituted an embezzlement. With this contention we are unable to agree. It is not essential that a managing officer of a corporation, who is often spoken of as a trustee but is rather a quasi-trustee, in the wrongful use of the funds of the corporation for his own benefit, should commit a technical embezzlement. We may call it a conversion, misapplication, misappropriation, or an embezzlement.

In our former memorandum we stated: "In order for plaintiff to recover, it was necessary for him to

show that premiums on the policies of life insurance were paid from the funds of the Municipal Reserve and Bond Company, which had been appropriated wrongfully by William Anson Tyler, deceased.'' To this statement we still adhere. Counsel for respondents were considerably exercised for the reason that the cases cited by the court in the former opinion chanced to involve an embezzlement. It is well settled that whenever a trustee, or other person in a fiduciary position, wrongfully purchases land or personal property with trust funds, or funds in his hands impressed with a fiduciary character, and takes title to such property in his own name, without any declaration of a trust, a trust with respect to such property at once results in favor of the original *cestui que trust* or other beneficiary. The doctrine in regard to such a trust is of wide operation and is used by courts of equity in maintaining and protecting beneficial rights of property. It is applied to trustees proper, to executors, administrators, directors and managers of corporations, guardians of infant wards, agents using money of their principals, partners using partnership funds, and to all persons who stand in fiduciary relations towards others: 1 Pomeroy, Equity Jurisprudence, (4th Ed.) § 422. There may or may not be an element of embezzlement in such transactions. In addition to the authorities cited in our former opinion, see the following cases, which are instructive in regard to the rule involved in trusts: *Manaudas v. Mann,* 22 Or. 525 (30 P. 422); *Dunham v. Siglin,* 39 Or. 291, 299 (64 P. 661); *Young v. Hughes,* 39 Or. 586 (65 P. 987, 66 P. 272); *Thorsen v. Hooper,* 57 Or. 75 (109 P. 388); *North v. Union Savings & Loan Association,* 59 Or. 483 (117 P. 822); *Templeton v. Bockler,* 73 Or. 494 (144 P. 405); *Barnes v. Spencer,* 79 Or. 205 (153 P. 47).

██ In applying the principle that the *cestui que trust*, the receiver of the Municipal Reserve and Bond Company, is entitled to the proceeds of the policies in the proportion that the payments paid from the trust funds bore to the total premiums paid, we figured the first three premiums as having been paid by the company; the fourth by Tyler; and, in payment of the fifth, a dividend on each policy of $203.75 was applied in payment of that premium. This we allocated to plaintiff and to the trustee for Mrs. Tyler and her daughter, according to the interest of each party in the policy. In regard to the policy loan of $1,295, which, together with another policy dividend, paid the quarterly premiums Nos. 7 to 12 inclusive, but little was said in the argument or briefs as to the application of the loan, and, as Tyler signed a note for same, the premiums paid from the policy loan were credited to him. In this we were in error. We think, after mature deliberation, that the proceeds of the policy loan should be apportioned and applied the same as a policy dividend. A policy loan is made upon the sole security of the policy of insurance, and, when made, it does not create the ordinary relation of debtor and creditor between the insurance company and the insured. It is an advancement on the policy without a personal obligation as to repayment. Section 46-506, subd. 1 (f), Oregon Code 1930, requires that the loan shall be made "on proper assignment or pledge of the policy and on the sole security thereof". The regular relation of debtor and creditor does not exist between the borrower and the company. It is in the nature of a withdrawal of the reserve *pro tanto,* as under the terms of the contract the insured is entitled at any time to demand and receive a loan, and he alone has the option of deciding whether he will ever repay it or not: 32 C. J. 1166, § 279;

*Rustin v. Aetna Life Ins. Co.,* 98 Neb. 426 (153 N. W. 548); 2 Couch Cyc. of Ins. Law, 995, § 355; 1 Cooley, Briefs on Insurance (2d Ed.) 159; *Wagner v. Thieriot,* 203 App. Div. 757 (197 N. Y. S. 560, affirmed 236 N. Y. 588, 142 N. E. 295). Policy loans are not liabilities of the estate of the insured: *Faris v. Faris,* 76 Ind. App. 336 (130 N. E. 444); 45 A. L. R. 718, Annot.

The Municipal Reserve and Bond Company is entitled to its proportionate share of the dividends and policy loan, and to credit therefor. We therefore compute the amount of the proceeds of the policies that each party is entitled to, as follows: Policies No. 649852 and No. 649853, each for $25,000, were on the life of William Anson Tyler, issued July 2, 1929, first premium July 2, 1929, $222.50, paid by the Municipal Reserve and Bond Company; second premium October 2, 1929, $220, paid by the company; third premium January 2, 1930, $220, paid by the company. The fourth premium, April 2, 1930, $220, was paid by Tyler. The fifth premium, July 2, 1930, $222.50, was paid by applying a policy dividend of $203.75, of which the company was entitled to 75.07 per cent, or $152.96, and Tyler was entitled to 24.93 per cent thereof, or $50.79, according to their then interest in the policies. In addition Tyler paid $18.75, or a total of $69.54. The sixth premium, due October 2, 1930, $220, was paid by Tyler; the seventh premium to the twelfth, both inclusive, were paid by policy loan of $1,295 and accrued dividend of $210. The seventh to twelfth premiums, both inclusive, the first due January 2, 1931, and the latter due April 2, 1932, make 12 quarterly premiums, although it is contended by respondents that there were 16 quarterly premiums paid. The interest of the Municipal Reserve and Bond Company in the policies at the date of the loan and dividend was 61.54 per cent, and

it was entitled to that per cent of the premiums. The premiums amounted to $1,322.50. The amount of the policy loan to which the company is entitled is $813.88. The share of the funds belonging to Tyler, derived from the policy loan, amounted to $508.62. Therefore the company paid premiums, which, together with the credits to which they are entitled on account of the dividends and policy loan, total $1,629.34, or 61.54 per cent of the total amount of premiums paid. The amount of the premiums paid by Tyler, together with the credits to which he is entitled on account of the policy loan and dividends totals $1,018.16, or 38.46 per cent of the amount of premiums paid. Settlement of each of the policies was made July 21, 1931, and, after deducting $1,091.51 for loan, and perhaps some interest, payment of $23,903.49 was made on each policy, or a total of $47,806.98 on both policies. Therefore the receiver of the Municipal Reserve and Bond Company is entitled to the proceeds of the two policies in proportion that the payments made from the trust funds of the company bear to the total premiums paid, or 61.54 per cent of $47,806.98, which equals $29,420.42, together with interest thereon at 6 per cent from July 21, 1931, for which a decree will be entered in favor of plaintiff. The rule which we have enunciated and followed and applied is equitable and just. No third innocent party is interested or affected.

■ It is the contention of the respondents that the Municipal Reserve and Bond Company waived its right to any interest in the policies involved. The basis for this contention is that a resolution to that effect was written and placed in the minutes of the corporation. There was no meeting of the directors. It was not, as we think, an act of the corporation but an act of Tyler himself. It was a mere form of resolution and not

valid. It seems that Blanchard and Horal, to whom the shell of the corporation was transferred after it had been denuded of about everything of value by Hattrem and Tyler, were convenient tools for Tyler in the matter of permitting the resolution to be placed in the minutes. There was no valid waiver of the right of the corporation in the two policies. The scheme was not complete until the trustee for Mrs. Tyler and the daughter was made beneficiary in the policies, which merely extended the time for the completion of the conversion of the funds.

Our finding in the former memorandum opinion that the premium payments on the two policies "were paid by Mr. Tyler except the first three quarterly premiums" should have read as follows: "were paid by Mr. Tyler or from dividends or loan on the policies, except the first three quarterly premiums".

■ Appellant makes the contention, in regard to the fourth quarterly premium paid April 2, 1930, for which a note was given by the company to the insurance company and afterwards a note given by the company to agents who advanced premiums, that said premium was paid by the Municipal Reserve and Bond Company. The giving of the note did not pay the premium. Eventually Tyler paid the note and premium and his estate should be credited with the same. It is not shown that Tyler paid same with the funds of the corporation: *Sisemore v. Pelton*, 17 Or. 546 (21 P. 667). Respondent's petition for rehearing will be denied.

Our former opinion will be changed in accordance herewith and the decree of the trial court will be modified in accordance with this opinion.

KELLY and BELT, JJ., not participating.