DAYTON v. H. B. CLAFLIN CO.

(Supreme Court, Appellate Division, First Department. June 11, 1897.)

LIFE INSURANCE—PAYMENT OF PREMIUMS IN PART WITH TRUST FUNDS—RIGHTS OF PARTIES.

Where one of the intermediate premiums on a life policy payable to the wife of the assured was paid with her money, the fact that the other premiums were paid with stolen funds does not give the person from whom the funds were stolen a right to the entire proceeds of the policy, subject to a lien in favor of the beneficiary for the sum contributed by her, but entitles such beneficiary to her pro rata share of the proceeds.

Appeal from judgment on report of referee.

Action by Julia A. Dayton against the H. B. Claflin Company, substituted as defendant in place of the Mutual Life Insurance Company, of New York. From a judgment for defendant, entered on the report of a referee (41 N. Y. Supp. 839), plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, PATTERSON, and PARKER, JJ.

Abel E. Blackmar, for appellant.
John L. Wilkie, for respondent.

WILLIAMS, J. The action was originally brought against the Mutual Life Insurance Company to recover the sum of $10,000, upon two policies of insurance issued upon the life of Henry W. Dayton, the husband of plaintiff. One policy, for $5,000, was issued November 24, 1890, payable directly to the plaintiff. The other policy, for $5,000, was issued September 10, 1891, payable to the husband himself, and was assigned to the plaintiff December 4, 1891. After the commencement of the action, an order was entered directing the $10,000 to be deposited in court, awaiting the determination of the claims thereto; and the defendant the H. B. Claflin Company was substituted for the insurance company in the action. The defendant

claimed it was entitled to the whole insurance fund, and its claim was based substantially upon the allegation that the assured had for many years before his death been one of the employés of the firm of the H. B. Claflin Company, and of the defendant company, and that from time to time since early in 1890 the defendant had stolen and embezzled from the firm and the defendant company large sums of money, and that all the premiums upon the two policies of insurance had been paid from the moneys so stolen and embezzled. The referee decided that the whole fund, $10,000, belonged to the defendant, subject to a lien thereon in favor of the plaintiff for the sum of $76, with interest from November 24, 1891, and that the plaintiff had no other claim to any part of the fund. And the referee, in his opinion, stated the ground thereof to be that the fund was the product of the defendant's moneys, so used as to impress the fund with a trust in favor of the defendant, and the same was, both in law and equity, the property of the defendant, and that the $76 declared to be a lien on the fund in favor of the plaintiff was for such sum loaned by plaintiff to the assured, and by him used for the payment of one of the premiums going to produce the fund. It seems, therefore, that the referee found that all the premiums on both the policies were paid from the moneys stolen and embezzled by the assured from the firm and the defendant company, except the one premium of $76, which was paid with moneys furnished by the plaintiff, and which the referee found was loaned by plaintiff to the assured for the purpose of making such payment, and that the money was in no way the money of the firm or defendant company. The decision of the referee was apparently intended to be based upon the principles of law laid down by the court of appeals in Holmes v. Gilman, 138 N. Y. 369, 34 N. E. 205. That action was brought by a partner of the assured against the wife and children of the latter, to reach insurance moneys collected upon policies issued upon the life of the assured, and to have a trust impressed thereon in favor of the partnership, on the ground that the premiums on the policies had all been paid from partnership funds wrongfully abstracted by the assured. The policies were all payable directly to the wife, but none of the premiums had been paid by the wife, or from her funds. All of them had been paid by the assured from the moneys wrongfully abstracted from the partnership. Upon these facts, the whole fund was awarded to the plaintiff. A few quotations from the opinion of Peckham, J., will show just what was held in that case:

"The claim of the plaintiff to recover the moneys arising from the payment of these policies is based upon the principle which allows a cestui que trust to follow trust funds, and to appropriate to himself the property into which such funds have been changed, together with the increased value of such property, provided the trust funds can be clearly ascertained, traced, and identified, and provided the rights of bona fide purchasers for value without notice do not intervene. The right has its basis in the right of property, and the court proceeds on the principle that the title has not been affected by the change made of the trust funds, and the cestui que trust has his option to claim the property and its increased value, as representing his original fund. The right to follow and appropriate ceases only when the means of ascertainment fail. It is a question of title. * * * The counsel for the defendant urges that the rule clearly is, if the trust fund has become mingled with money or prop-

erty of the trustee or others, equity impresses the proceeds with a trust to an amount equal to the original trust fund and interest, and will go no further. He then claims that the firm funds which went into the purchase of the policies, and the payment of the annual premiums, were mingled with the property right of the wife, called her 'insurable interest' in her husband's life, and so the policies were not wholly the result of the use of the firm funds, and therefore the plaintiff can have only a lien on the policies or the moneys arising from their payment, to the amount of the premiums paid with the firm funds and interest thereon. This is really the chief question in the case. Where moneys have been misapplied, and have been used as a portion of a larger amount which has been invested in other property, the property thus acquired does not, as a whole, belong to the owner of the money misapplied. It does not belong to him, because it has not been purchased or acquired wholly with his money or funds; and hence it is that such property is held charged with a lien, at least to the amount of the trust funds invested in it. It is not necessary to here decide it, because we take another view of the facts; but I am not at all prepared to admit that under no circumstances is the cestui que trust entitled to recover back anything more than the amount of his property and interest, where there has been a mingling of funds. In case the trustee took $1,000 of the trust fund, and $500 of his own, and purchased property, which advanced in value to twice its original sum, I have seen no case where the point has been determined that the whole increased value belongs to the trustee, and that only the original sum wrongfully taken, and interest, can be given to the cestui que trust, though it was by reason of the wrongful use of the trust funds that the trustee was enabled to realize such value. If, in such case, the cestui que trust were not allowed to, at least, participate proportionately in this increased value, it would appear to be a violation of the principle that the trustee cannot ever be permitted to make a profit out of the use of the trust funds. It seems to me to be a case for the application of the doctrine that the parties become co-owners of the property, at the option of the cestui que trust, in the proportion which their various contributions bear to the sum total invested. In this case, however, the defendant is enabled to claim a mingling of funds and property only by treating the right of the wife to insure the life of her husband for her benefit as a species of property of her own, which has been mingled with the funds of the firm, the result of the combination being the procurement of the policies."

The opinion then proceeded to discuss this question of alleged right of property in the wife to insure her husband's life, and it was held that this was not such right of property as constituted a mingling of funds in the purchase or procurement of the policies. In the case quoted from above, there was held to have been no mingling of the partnership funds with the funds of the wife or the assured in the payment of premiums. All were paid from partnership funds. In the case we are considering, there was concededly a mingling of defendant's funds with the funds of the wife or the assured. The court, in Holmes v. Gilman, declined to pass upon the question as to the rights of the parties in case of the mingling of funds in the payment of premiums, a part being trust funds, and a part other than trust funds. The opinion of Peckham, J., evidently was that under some circumstances the cestui que trust would be permitted to share proportionately in the whole fund. There was no suggestion by him, however, that the cestui que trust would be permitted in any such case to recover the whole fund, subject only to a claim by the assured or his wife or children to a return of the money advanced by them, or either of them, with interest; and yet this is just what the referee decided in this case. He found that, as to the policy first issued, the one payable directly to the wife, there was a mingling of

funds in the payment of the premiums, one payment, $76 (the second one made on the policy), having been made by the deceased from moneys furnished by the wife expressly for his purpose; and yet the defendant was awarded the whole fund, the wife being merely allowed a lien thereon for her $76 and interest. The referee put this on the ground that the wife loaned this money to the husband, and did not pay the premium herself. There was little reason for holding it to have been a loan. The relation of the wife to that policy was that she held the legal title to the policy. It was a contract between the company and the wife, the husband acting merely as her agent. This was held in Whitehead v. Insurance Co., 102 N. Y. 143, 6 N. E. 267, and has never been questioned. The wife furnished this $76, therefore, to her agent, to pay a premium upon her own policy, and that would hardly have constituted a loan by her to her husband. It is, however, of no consequence whether the money was that of the wife or the husband, when it was paid upon the policy. It was not the money of the defendant any way, and the defendant was not, therefore, in any event entitled to the proportionate share in the fund arising from that policy, based upon that payment. Every payment of premium made on that policy which was not from the money of the defendant inured to the benefit of the wife, and, in the accounting with reference to and distribution of the fund arising from that policy, she was at least entitled to the proportionate share based upon such payment. The case of Holmes v. Gilman, above, is certainly authority for the proposition that, where all the premiums have been paid from trust moneys, the cestui que trust is entitled to the whole insurance fund. When, however, a part of the premiums only have been paid from trust moneys, a different question is presented. In such case, where the first premiums paid, when the policies had their legal inception, were made from the trust moneys, the inception of the policies and the legal title of the wife thereto would be infected with the improper use of trust moneys, and the rights of the wife would, from the very first, be subject and subordinate to the equities of the cestui que trust therein. The wife would still hold the legal title, however; and, while her legal title would avail her nothing if all subsequent premiums were paid from trust moneys, the whole fund then being regarded as earned solely by trust moneys, and as belonging to the cestui que trust, still, if some of the subsequent premiums should be paid by the wife or the husband for their benefit from any other than trust money, such premiums would attach themselves to the wife's legal title, and she would at least be entitled to the proportionate share of the whole fund, earned by such premium as she was entitled to the benefit of. This was precisely the condition of facts found by the referee in this case, viz. that there was a mingling of funds used in the payment of premiums upon one of the policies, and that the inception of that policy was tainted with the use of stolen moneys. The referee upon such a finding of facts should at least have allowed the wife to share in the whole fund in proportion to the amount of the premiums paid by her.

We are not at all satisfied with the findings of the referee upon the evidence before him. The defendant had the burden of proving that the payments of premiums upon the policies were made from stolen moneys; and we do not think the evidence was such as to authorize the finding as to the first premiums on the two policies, and as to several others, that they were made from moneys embezzled and stolen from the defendant company. Nor do we think the defendant company showed itself entitled to claim the benefit of any moneys used in the payment of premiums, which had been embezzled and stolen from the old firm. We refrain, however, from discussing the facts or the evidence given on the first trial, because we do not desire in any way to interfere with a full and fair investigation of the facts upon the new trial which must be ordered before a new referee. The new referee should, upon such evidence as is produced before him, determine, as to the various premiums paid upon these two policies, which ones were paid from moneys embezzled and stolen from the defendant, and which from moneys embezzled and stolen from the old company, and, as to the moneys of the old company, what right, if any, the defendant acquired therein. These facts the new referee should determine without reference to, and without being influenced by, any determination made by the referee on the first trial.

We have only passed upon the questions of law involved in the case so far as applicable to the facts found by the referee. We do not determine what the rights of the parties may be upon any new condition of the facts found by the new referee.

The judgment should be reversed, and a new trial ordered before a new referee, to be named in the order, with costs of this appeal to abide event. All concur.