MASSACHUSETTS BONDING & INSURANCE CO. *v.*
JOSSELYN.

1. TRUSTS—TRUSTEE MAY NOT PROFIT FROM TRUST.
   A trustee may make no profit out of the handling of a
   trust estate.

2. SAME—UNAUTHORIZED INVESTMENT OF TRUST FUNDS MAY BE
   TREATED AS FOR BENEFIT OF CESTUI QUE TRUST.
   Where money held upon trust is misapplied by the trustee
   and traced into an unauthorized investment in property
   of any nature, the investment thus made, in the absence
   of a claim of *bona fide* ownership by a third person may
   be treated by the *cestui que trust* as made for his benefit.

3. SAME—LIFE INSURANCE PAID FOR WITH TRUST FUNDS IMPRESSED
   WITH TRUST.
   Where the administrator of an estate commingled the
   funds of the estate with his private funds, and used said
   trust funds in the payment of life insurance premiums,
   making the insurance payable to his wife, the proceeds of
   said policies are impressed with a trust in favor of the
   estate, notwithstanding 2 Comp. Laws 1915, § 9345, pro-
   viding that moneys payable under policies in which the
   wife is named as beneficiary are not subject to the claims
   of creditors.

4. SAME—PROCEEDS PRORATED WHERE PARTLY PAID FOR WITH TRUST
   FUNDS.
   Where part of the premiums was paid with trust funds
   and part with private funds, the decree of the court below
   prorating the proceeds of the policies in the proportion
   that the trust funds and the private funds thus invested
   bore to each other, *held*, correct.

Appeal from Wayne; Cross (Orien S.), J., presid-
ing.    Submitted June 5, 1923.    (Docket No. 8.)
Decided July 19, 1923.

Bill by the Massachusetts Bonding & Insurance Com-
pany against Rose Reeber Josselyn and another to

On identifying misapplied trust funds to follow and recover
them, see note L. R. A. 1916C, 21.

impress a trust upon a fund secured from certain insurance policies. From a decree for plaintiff, defendants appeal. Affirmed.

*Monaghan, Crowley, Reilley & Kellogg,* for plaintiff.

*James O. Murfin,* for defendants.

SHARPE, J. Albert J. Reeber, an attorney of Detroit, the former husband of defendant Rose Reeber Josselyn, was appointed administrator of the estate of Albert Zeitz on August 30, 1916, and gave the usual bond, in which the plaintiff was surety, in the sum of $6,000. On December 21st of the same year, he was appointed administrator with the will annexed of the estate of John A. Moeller and gave a similar bond, in which plaintiff was also a surety, in the sum of $50,000. He administered these estates until his death on October 11, 1917. The Detroit Trust Company was appointed administrator of his estate. It presented final accounts in both estates, which were duly allowed, showing an indebtedness by him to the Zeitz estate in the sum of $5,147.91 and to the Moeller estate in the sum of $26,000. These sums the plaintiff company paid to the duly appointed administrators of said estates and assignments of their respective claims against the estate of Reeber and such other persons as might be in possession of trust funds or property were duly made to plaintiff.

At the time of his first appointment, Reeber had a checking account in the Central Savings Bank at Detroit, showing a balance of $33.69. He deposited substantially all of the moneys received by him belonging to these estates in such account, thus commingling the funds belonging to the two estates with his personal funds. At the time of his death, there was a balance of $742.19 to his credit in the bank. During this period, Reeber had made deposits

of large sums received by him from other sources, the amount of which seems to be somewhat in dispute.

Previous to his appointment as administrator of either estate, Reeber had caused his life to be insured by three policies issued by the John Hancock Mutual Life Insurance Company, each in the sum of $5,000, payable in the event of his death to his wife. The last premium on one of these policies, amounting to $138.60, the last two premiums on another, amounting to $320.20, and the last premium on the third policy, amounting to $139.10, were paid by him in 1916 and 1917, after the commingling of such funds, by check on the bank in which they were deposited. After such appointments, he caused his life to be insured by policies payable to his wife in the sum of $60,000. The premiums on all of these policies were paid by checks drawn on the bank in which the estate moneys were deposited. After his death, the defendant, Rose Reeber Josselyn, received as beneficiary under the policies first referred to $15,106.03, and under the latter $47,054.50.

It is plaintiff's claim that each and every of the premiums paid on these policies after Reeber's appointment as administrator was paid at a time when he had no money other than that belonging to these estates in the bank and that consequently they were paid out of the funds of the estates. Plaintiff, in this proceeding, seeks to impress upon the properties in which the defendant, Rose Reeber Josselyn, has invested these insurance moneys, one parcel of which is in the name of her present husband, Henry E. Josselyn, the other defendant, and herself, and on the moneys not invested but deposited by her in certain banks, the trust arising from the use of the moneys of the estates in paying the premiums on such policies to the extent to which the beneficiary in the several policies benefited by such payments.

It appears clearly from Reeber's bank account that the balances on deposit at the time the several checks for premiums were paid were less than the amount of the moneys of the estates which had been theretofore deposited and not withdrawn.    It will serve no useful purpose to insert in this opinion a copy of the entries in the books of the bank or the summary compiled by an accountant and appearing in the record establishing this fact.

The trial court determined that the sums received on policies issued prior to Reeber's appointment as administrator should be prorated "in the proportion that the trust funds and private funds invested therein bore to each other," and concluded that of the total insurance moneys received, $62,180.53, $54,471.80 thereof "belonged to and was the property of the two said estates, and by virtue of the assignment hereinbefore mentioned became and was the property of the said plaintiff herein."

It is an elementary rule that a trustee may make no profit out of the handling of a trust estate.    It is also well settled that where money held upon trust is misapplied by the trustee and traced into an unauthorized investment in property of any nature, the investment thus made, in the absence of a claim of *bona fide* ownership by a third person, may be treated by the *cestui que trust* as made for his benefit.    *Pierce v. Holzer*, 65 Mich. 263; *Smith v. Maxey*, 186 Mich. 151; *Watson v. Wagner*, 202 Mich. 397.    The consideration for the investment is trust money and the *cestui que trust* becomes the equitable owner of the property purchased therewith.   His right thereto is a property right, not one created by any preference or favoritism shown by a court of equity.

As before stated, it clearly appears that the trust moneys were used in the payment of insurance premiums.    Had such moneys been used in the pur-

chase of real estate or personal property of any kind and title thereto taken in the name of Reeber or his wife or any other person except a *bona fide* purchaser for value, any such property, irrespective of whether it had increased or decreased in value, would have been the property of these estates. The contingency of gain would enure to their benefit just as the contingency of loss would have to be borne by them unless able to collect any deficiency from the trustee. In law they would be the equitable owners of any property in which their moneys had been invested.

We are unable by any process of reasoning to apply any different rule to trust moneys used in the payment of life insurance premiums. The investment thus made might or might not have proved productive. Had the insured or the beneficiary permitted the policies to lapse by nonpayment of the premiums, the estates would have lost the moneys so invested, unless otherwise able to secure payment. By the use of their money, the policies were kept alive and in full force at the time of Reeber's death. Having furnished the consideration therefor, the proceeds thereof are impressed with the trust which follows the misapplication of the trust funds.

The fact that the wife of Reeber, instead of his estate, was named as beneficiary cannot affect plaintiff's rights. She paid no part of the premiums. While the statute (2 Comp. Laws 1915, § 9345) provides that moneys payable under policies in which the wife is named as beneficiary are not subject to the claims of creditors, the question here presented is not one of preference. Her right under the statute must yield to the paramount right of the estates, the moneys of which furnished the consideration for the investment.

We think the trial court was right in prorating as he did the proceeds of the policies in which but partial

payments of premiums were made out of the moneys of the estates. The decree limited recovery to the amount of the actual shortage as determined by the probate court. This we think plaintiff was clearly entitled to.

The conclusion reached is in accord with that expressed in *Holmes* v. *Gilman*, 138 N. Y. 369 (34 N. E. 205, 20 L. R. A. 566, 34 Am. St. Rep. 463). Defendant's husband became a member of a firm of copartners in 1880. He had exclusive charge of its office affairs, its banking and the making of notes issued in its business. He died pending an audit of the firm's books, which disclosed that he had wrongfully appropriated large sums of money belonging to the firm to his own use. After his death, it was discovered that he had paid considerable sums in securing life insurance payable to his wife, the premiums on which had been paid with the moneys of the firm. It was held that the proceeds of the policies could be recovered from the wife, as beneficiary, to the amount, at least, of his indebtedness to the firm. In the opinion, written by Mr. Justice Peckham, in which many authorities are discussed, it is said:

"It has been said that the husband, when he procures an insurance for his wife's benefit, acts as her agent, or represents her, and that she has a vested interest in the policies the moment they are delivered by force of the statute permitting them to be made in this form. *Whitehead* v. *Insurance Co.*, 102 N. Y. 143 (6 N. E. 267, 55 Am. Rep. 787). This is doubtless true in the case of the husband procuring the insurance with funds which belong to him or to his wife, but where the premiums are paid with moneys which in truth do not belong to him, and which the husband misapplies in so paying, and by which he violates his obligation to the true owner of the moneys thus used, the wife in such case must claim the policy subject to the means by which the husband procured it, and she must adopt all his methods. The moneys in the hands of the company could not be recovered

back by the *cestui que trust* if received by the company in good faith, because it would stand in the position of a *bona fide* purchaser, yet the policy itself would stand as the representative of these trust moneys, and the right of the wife would be to that extent subordinate. * * * The *cestui que trust* is entitled to follow his funds and to take the moneys or the policy at his option."

The right to prorate where but a part of the premiums is paid out of the trust fund is also discussed.

In *Shaler* v. *Trowbridge*, 28 N. J. Eq. 595, where it was sought to impress a trust upon the proceeds of a life insurance policy, it was said:

"It is urged that a life policy should be exempt from the equitable rule which applies to other transactions, because it differs in its character from ordinary investments, and is a beneficent provision for the family, which should be favored.

"Public policy clearly forbids the adoption of this suggestion; it would invite the commission of the wrong by assuring the wrong-doer that there is one mode in which he could surely profit by his turpitude, in securing a provision for his family. The policy is the thing which the partnership money purchased, and it stands in the place of what was corruptly abstracted. Whether the policy would be productive, when terminated by death, of more or less than the premiums paid upon it, would depend upon the length of the life insured. The fact that it has a contingent value does not distinguish it, in principle, from an investment in the purchase of stock, or of an annuity, and can give no support to the claim of the widow, that nothing should be exacted of her beyond the amount of premiums paid upon it out of the firm funds."

The decree is affirmed, with costs to appellee.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.