EDWIN F. COFFIN, Respondent, *v.* BYRDIE SHOUR, Individually and as Administratrix, etc., of LOUIS N. SHOUR, Deceased, Appellant, Impleaded with L. N. SHOUR & Co., and Another, Defendants.

First Department, February 7, 1936.

*Norman Roth* of counsel [*Herman F. Schwartz* with him on the brief; *Samuel S. Breslin*, attorney], for the appellant.

*Irving Mariash*, for the respondent.

UNTERMYER, J. The plaintiff seeks in this action to impress a trust, to the extent of $4,750 and interest, upon the proceeds of life insurance on the life of Louis N. Shour, now deceased, which were payable to Byrdie Shour, his wife, as the beneficiary.

On April 13, 1932, Shour died as the result of suicide. For some time previous thereto he was hopelessly insolvent and at the time of his death had liabilities in excess of $400,000 and assets of less than $1,000.

In December, 1931, and January, 1932, the plaintiff had intrusted to Shour checks aggregating $4,750 with which to discharge a mortgage upon property of the plaintiff. Shour deposited these checks in a personal account which he maintained in the name of L. N. Shour & Co., and instead of applying them in discharge of the mortgage, converted them to his own use, shortly thereafter committing suicide. Of the sum of $4,750, however, he withdrew only $611.05 by check and $197 in cash for the payment of premiums on life insurance policies, the proceeds of which have aggregated, approximately, $85,000. What the condition of these policies may have been at that time, what premiums had previously been paid, when the policies would have matured and what their surrender value was, does not appear. All that appears is the face amount of the policies, that they had been in existence for some period of time, the amount received upon the death of Shour and that Byrdie Shour was the designated beneficiary.

The Special Term has held that the policies upon which premiums amounting to $808.05 had been paid out of the funds intrusted by the plaintiff to Shour, are impressed with a trust for the full amount of $4,750, even though the balance of $3,941.95 was used by Shour for purposes in no way connected with these policies. We think this was error and that, in the absence of proof making possible an apportionment between the parties, the plaintiff would be limited to an equitable lien on the policies equal to the amount applied to the payment of premiums.

 If Shour had used a part of these trust funds to pay the first and all succeeding premiums on the policies, the plaintiff could have followed the proceeds not only to the extent of the amount thus

misappropriated but to the extent of the full amount of the trust fund (*Holmes* v. *Gilman*, 138 N. Y. 369) and perhaps even as to any excess (*Holmes* v. *Gilman, supra*, p. 385). This is upon the theory that the beneficiary had no right of property in the policies at the time the premiums were paid with converted funds. (*Shaler* v. *Trowbridge*, 28 N. J. Eq. 595.) The trustee in such a case does not commingle trust funds with any existing interest in the policy because the beneficiary acquired an interest only as the result of funds which were misapplied.

A different problem, however, confronts us in the present case. The policies here, payable to the wife as beneficiary, had a valid inception before the plaintiff's money was taken to pay these particular premiums. They constituted property purchased with the husband's personal funds in which the wife had acquired a vested interest of which she could not be deprived without her consent. (*Whitehead* v. *New York Life Ins. Co.*, 102 N. Y. 143.) Therefore, when Shour used the plaintiff's money to pay the premiums, he did not mingle it with property of his own. He mingled it with property belonging to his wife, who concededly was innocent of any wrong. The plaintiff, it is true, was thereby deprived of so much of his property as was illegally invested in the policies, but it does not necessarily follow that he is entitled to recover for the remainder of the trust fund out of the interest and perhaps to the exclusion of the beneficiary. For, to sustain that theory the plaintiff must contend that he might have recourse to the policies, no matter how large had been the fund converted by Shour nor how small the amount consumed in premiums, even though the entire interest of the beneficiary were thereby swept away. While it is true, as the trial court observed, that the investment of the plaintiff's funds may have saved these policies for the beneficiary, it is equally true that the policies would not have been available at all were it not for the lawful investment of the husband's funds made with intent to benefit his wife throughout a long period of time.

We think the correct rule to be applied is that the beneficiary and the plaintiff are entitled to share in the proceeds of the policies in the proportion that personal funds of the husband and trust funds each bear to the total premiums paid, limited, however, to the sum of $4,750 with interest, demanded in the complaint. In *Holmes* v. *Gilman* (*supra*, pp. 378, 379) this was suggested as the rule to be applied where a trustee has mingled trust funds with property not belonging to him. It was also the rule applied in *Dayton* v. *Claflin Co.* (19 App. Div. 120), in *Truelsch* v. *Miller* (186 Wis. 239; 202 N. W. 352) and in *Massachusetts Bonding & Insurance*

*Co.* v. *Josselyn* (224 Mich. 159; 194 N. W. 548). Decisions may indeed be found which limit recovery to the premiums actually paid. (*Tolman* v. *Crowell*, 288 Mass. 397; 193 N. E. 60; *Hubbard* v. *Stapp*, 32 Ill. App. 541; *Thum* v. *Wolstenholme*, 21 Utah, 446; 61 Pac. 537), but we think they are opposed to the rule prevailing in this State as well as to the weight of well-considered opinion elsewhere. The *cestui que trust* may, of course, assert an equitable lien on the policies merely for the premiums paid with trust funds. But he is not limited to this. (*Wendt* v. *Fischer*, 243 N. Y. 439; *Hammond* v. *Pennock*, 61 id. 145.) He may also at his option follow the original fund and appropriate to himself the substituted property into which it has been changed, together with any increased value, until the power of identification is lost or the rights of purchasers for value, without notice, intervene. (*American Sugar Refining Co.* v. *Fancher*, 145 N. Y. 552; *Van Alen* v. *American National Bank*, 52 id. 1.) The plaintiff, therefore, was not limited to an equitable lien for so much of his money as was used to pay the premiums, but was entitled to assert a direct interest in the policies and the proceeds. That interest was, however, limited by the rights of the wife as beneficiary to the extent that they were acquired by the investment of the husband's funds, with the result that the parties occupy the position of co-owners in the proceeds of the policies in the proportion which the funds lawfully invested by the husband bear to the unlawful investment of the plaintiff's funds, not exceeding the sum demanded in the complaint. Since the facts necessary to determine that proportion do not appear, a new trial must be ordered even though it is possible, of course, that another trial will produce the same result.

There is a further contention by the appellant that the plaintiff is precluded from following these trust funds into the proceeds of the policies by section 55-a of the Insurance Law (added by Laws of 1927, chap. 468). We think the contention is untenable. Section 55-a of the Insurance Law limits the rights of creditors in the proceeds of such policies, but does not abrogate the power of a court of equity to follow trust funds wherever they may be found. The question, as was observed by PECKHAM, J., in *Holmes* v. *Gilman* (*supra*, p. 376), "is a question of title." Nor do we believe that it could have been intended to constitute insurance policies a safe depository for converted property. Other statutes, very similar in terms, were so construed in *Massachusetts Bonding & Insurance Co.* v. *Josselyn* (*supra*) and *Truelsch* v. *Miller* (*supra*). In *Tolman* v. *Crowell* (*supra*), also, the distinction between the rights of creditors and the rights of persons whose property has been appropriated to the payment of premiums is fully recognized.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

MARTIN, P. J., TOWNLEY and DORE, JJ., concur; COHN, J., dissents and votes for affirmance.

COHN, J. (dissenting). When Louis N. Shour committed suicide he was practically penniless and his liabilities were over $400,000. If plaintiff's money had not been employed by Shour to pay the premiums which fell due between January and April, 1932, on the life insurance policies of the Connecticut Mutual Life Insurance Company, the Central Union Life Insurance Company and the Travelers Insurance Company, these policies would have lapsed and the entire proceeds thereof, amounting to $86,507.71, would have been lost to Shour's widow, the defendant-appellant. During the period Shour was unlawfully using plaintiff's money to pay these insurance premiums, it may reasonably be inferred from the evidence that he had no other resources with which to meet these payments.

Moreover, the defendant-appellant, who was the beneficiary under these policies, must have been familiar with all of the terms and the date of issuance of each of them. Hence she was in a position to show, if it were a fact, that the proportionate share of the proceeds of these policies purchased by money embezzled from the plaintiff did not entitle the plaintiff to a recovery of the full amount of the trust fund, namely, $4,750.

There was ample justification for the conclusion reached by the learned justice at Special Term, " that as the premiums paid out of trust funds have been traced into a fund which would be non-existent were it not for the embezzlement, the entire fund whose esse rests on the embezzlement of the trust fund is chargeable to the trust fund to the extent of the trust fund."

In my view there is no necessity for a new trial as the proof in the record sufficiently establishes plaintiff's right to a recovery from the defendant-appellant in the full amount of the fund which was wrongfully taken from him by the deceased.

I, therefore, vote to affirm the judgment with costs.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.