[Civ. No. 12039. First Dist., Div. One. Dec. 22, 1942.]

C. K. BRODIE, Respondent, v. EVADNA L. BARNES et al.,
Appellants.

Francis R. McKenna for Appellants.

Don Lake and James R. Jaffray for Respondent.

PETERS, P. J.—Defendants appeal from a judgment determining that they hold certain properties as constructive trustees for plaintiff, and granting a personal judgment against the estate of W. B. Barnes. Defendant Evadna L. Barnes is the widow of W. B. Barnes, and defendant Charles B. Barnes is his son. Both are executors of the estate of W. B. Barnes.

W. B. Barnes died May 15, 1939. For many years prior to his death Barnes had been employed by Brodie Bros., Inc., a corporation. After his death it was discovered that from 1934 to the time of his death Barnes had embezzled substantial sums from his employer. A claim for this amount was filed by plaintiff in the estate proceedings and was rejected, and this action was then instituted. Among other things, the plaintiff alleged that certain of the misappropriated funds had been used to purchase a piece of real property at 1976 Waltonia Drive, Montrose, California, and some of such funds had been used to pay premiums on a $2,000 life insurance policy issued by defendant John Hancock Mutual Life Insurance Company, in which policy Evadna Barnes was named beneficiary. Plaintiff prayed for a judgment against the estate in the amount of the embezzled funds, for a determination that Mrs. Barnes held the real property in trust for plaintiff, and for a determination that the proceeds of the insurance policy should be ordered paid to him.

The trial court, at the request of the parties, appointed a referee, with instructions to investigate and report back to the court the extent and disposition of all misappropriated funds. The trial court's findings and judgment are largely based on the several reports of the referee. The referee proceeded to hold hearings and take evidence on May 3, 7, 8, and 20th. A reporter was present only on May 20th. On June 10, 1940, the referee filed his report with the trial court. Exceptions were filed by defendants, and on July 8, 1940, the report of the referee was set aside by stipulation of counsel, the matter resubmitted to the referee, and counsel granted leave to amend their pleadings to conform to the proof. On November 12, 1940, the referee filed his final report with the trial court, after holding hearings on October 3, 4, 14, and 18th. A reporter was present at all these hearings. This second report was not a supplement to the first. The second report was a complete report on all the problems

submitted to the referee, and was based on the evidence produced in May as well as that produced in October. Thereafter, at the request of defendants, the matter was re-referred to the referee to take further evidence. A further hearing, at which a reporter was present, was had, and the referee filed a supplemental report. Thereafter, defendants filed some fifty-six exceptions to the final and supplemental reports, all but a few of which were predicated on the contention that certain of the referee's findings were unsupported by, or contrary to, the evidence. The defendants, at the time of the hearing of these exceptions, had not secured a reporter's transcript of the proceedings before the referee. The trial judge repeatedly called this to the attention of the defendants, informing them, on numerous occasions, that there was no way he could pass on the sufficiency of the evidence to support the referee's findings unless the evidence was produced, and that the burden was on defendants to support their exceptions. The defendants refused to have a reporter's transcript prepared.

The referee had found that the total amount of the peculations by Barnes for the period 1934 to 1939 was $5,815.03. The trial court ruled that the statute of limitations barred the collection of any sums misappropriated prior to May 29, 1936, thus applying the three-year statute of limitations, the complaint having been filed May 29, 1939. The correctness of this ruling must be assumed on this appeal, plaintiff not having appealed. The trial court also found that the amount embezzled prior to May 29, 1936, was $2,450, which amount he held should be deducted from the total sum misappropriated. Judgment was given plaintiff for $3,365.03. The trial court also imposed a trust on the proceeds of the life insurance policy and on the real property, and decreed that the total of the proceeds of the life policy should be paid to plaintiff, that the realty should be sold to satisfy the judgment, plaintiff to get no more than $3,365.03 in any event, and the excess turned over to Evadna Barnes, and gave judgment against the estate of Barnes for any deficiency.

Before discussing the main contentions of the parties, some reference must be made to the state of the record upon which this appeal is presented. The appeal purports to be by the alternative method on a full transcript under section 953a of the Code of Civil Procedure. We have before us a re-

porter's transcript of all that occurred before the trial judge. That transcript is duly certified by the trial judge, the certification reciting that the "transcript does not contain any evidence taken or proceedings had before the referee." There has also been presented another large volume entitled "Reporter's Transcript" certified by the referee. That certification recites that it contains a correct transcript of all proceedings had before the referee on May 20th, October 3rd, 4th, 14th and 18th, 1940, but also recites that "hearings were held before me in said matter on various other dates, on which occasions no reporter was present or demanded, and on which dates several witnesses were sworn and testified, many exhibits were offered and introduced in evidence and objections made and ruled upon, of all of which there is no record other than my penciled notes thereof taken at said hearings; that my findings and conclusions were made and my reports to the Court were based upon said reported and unreported proceedings and that the unreported portions of said hearings and proceedings are not contained in the foregoing transcript." As already pointed out, this reporter's transcript was not before the trial judge at the time he passed upon the exceptions to the referee's report nor at the time he filed his findings and judgment. Nevertheless, appellants now urge that several of the basic findings of the trial court, based on the findings of the referee, are not supported by the evidence, and urge that the so-called "Reporter's Transcript," containing a portion of the evidence produced before the referee, demonstrates that this is so. Not only do appellants desire this court to pass on their contentions concerning the sufficiency of the evidence on an admittedly incomplete transcript, but they are asking this court to consider a transcript that they did not see fit to present to the trial court. ■ It is elementary that an appellate court, in passing on the sufficiency of the evidence, cannot consider evidence not before the trial court. ■ The findings and report of the referee came before the trial court with a presumption that they were based on competent and sufficient evidence. The appellants filed exceptions to the report and findings, and the burden was upon them to support their exceptions. The only way they could support their exceptions relating to the sufficiency of the evidence was to produce the evidence. Having failed and refused to produce

it before the trial court, although given ample opportunity to do so, they cannot properly produce the transcript before this court, and secure a ruling on their contentions relating to the sufficiency of the evidence. This court has not considered, and properly cannot consider the reporter's transcript here under discussion. All findings of the trial court and of the referee, must, therefore, be conclusively presumed to be supported.

Some reference should also be made to the clerk's transcript. There has been filed one volume entitled "Clerk's Transcript," and another entitled "Supplement to Clerk's Transcript." The Clerk's Transcript contains the usual documents going to make up the judgment roll. The Supplement contains various documents that properly should be in the judgment roll, and also contains the first report of the referee that was vacated by stipulation, and the final and the supplemental reports of the referee. There can be no doubt but that the referee's report and findings and exceptions thereto are properly part of the judgment roll. (§ 670, Code Civ. Proc.; *Weaver* v. *Fickett*, 196 Cal. 401 [238 P. 87].)

However, the first report of the referee cannot be considered by this court. The trial court, upon stipulation of all concerned, ordered that that report be "set aside without prejudice, and the matter is re-submitted to the Referee for further proceedings and the report under the order of reference heretofore made herein." The subsequent report filed by the referee was complete. It dealt not only with the evidence introduced after the resubmission, but also with the evidence produced before that time. In other words, it was a complete report and entirely superseded the report first filed. For that reason this court may not consider the superseded report.

The first contention of appellants is that there is no proper finding that respondent is the owner of the cause of action. It will be remembered that Barnes embezzled the money while employed by Brodie Bros., Inc., a corporation. The plaintiff is designated as "C. K. Brodie, doing business as Brodie Bros., a successor to Brodie Bros., Inc., a corporation." The trial court found, pursuant to an allegation contained in the second amended complaint as amended by permission of court to conform to the proof that: "On or about May 16, 1939, said corporation, Brodie Bros. Inc., was and

became fully wound up and dissolved according to law, leaving as the sole owner of its corporate stock, plaintiff herein, C. K. Brodie, who thereafter proceeded to carry on the business of said dissolved corporation by the name of Brodie Bros., and who ever since said May 16, 1939, has been and now is the owner of all the property, assets, books, choses in action, accounts, rights, titles and interests theretofore owned and possessed by said corporation, including the right, title and interest in and to all of said $3,365.03 so coming into the hands of said W. B. Barnes and retained by him, and to any and all properties into which said money or any part thereof has been transmuted by the acts of said W. B., Barnes, or the defendant Evadna L. Barnes.'' In the hearing before the trial court the parties stipulated that the corporation had been dissolved, and evidence was offered that C. K. Brodie owned all the stock of the company on the date of dissolution. Appellants urge, however, that it was necessary to allege and find a formal transfer of the cause of action to respondent. The trial court's finding demonstrates that respondent succeeded to the ownership of all assets of the corporation, including this claim, by operation of law. No formal transfer was required.

 The appellants next contend that there was not a sufficient tracing of the misappropriated funds to justify the imposition of a constructive trust on the real property and insurance policy. So far as this contention is predicated upon the alleged insufficiency of the evidence to support the findings of the referee and trial court, it is without merit. For reasons already stated, those findings must be conclusively presumed to be supported. So far as the real property located on Waltonia Drive is concerned, there is no merit to the contention that the findings do not support the conclusion that the misappropriated money was used to purchase this property. The referee found that this property was purchased in 1936 for a total purchase price of $3,150, of which $1,234 was paid in cash; that installments were paid from the Bank of America account in which salary and additional sums (obviously part of the misappropriated funds), were deposited; that at the death of Mr. Barnes there was on deposit with the Bank of Commerce $2,721 (which account contained the balance of the misappropriated funds) ; that Mrs. Barnes, the day following Mr. Barnes' death, with-

drew this entire account, and, after paying $500 for funeral expenses, deposited the balance in her account; that within a week of Mr. Barnes' death, Mrs. Barnes withdrew $1,528 from this account and paid the balance due on the real property. The referee found in detail the various financial transactions of Barnes, and it is the reasonable inference from those findings that the money used to purchase the real property was all taken from the accounts in which the misappropriated funds were deposited. (*Mitchell* v. *Dunn*, 211 Cal. 129 [294 P. 386].) The trial court found in accordance with this inference. It found that the original deposit and the balance due on the mortgage were paid from the funds misappropriated from plaintiff, and that ''as to the fact that it was the money and property of plaintiff that was used by said W. B. Barnes . . . in paying the purchase money on said real estate, defendant Evadna L. Barnes at all times had and now has full knowledge.'' This was a sufficient tracing of the funds to authorize the court in imposing the trust. It will be noted that the trial court did not give plaintiff the real property as it might well have done. It limited plaintiff's rights to a lien, ordered the property sold, and provided that the recovery by plaintiff should be limited to the amount embezzled.

As to the insurance policy, a different situation exists. Both the referee and the trial court found that the policy was issued for $2,000 on the life of W. B. Barnes by the John Hancock Mutual Life Insurance Company on December 1, 1931, and that the premiums after April 9, 1934, were paid by Barnes with money stolen from plaintiff. Obviously, the premiums from December 1, 1931, to April 9, 1934, must have been paid with Barnes' own funds. Moreover, appellant's plea of the statute of limitations was sustained as to all funds taken prior to May 29, 1936. Whether that determination was correct or not is immaterial, plaintiff not having appealed from the judgment is bound thereby. As a result, plaintiff has no legal right to any portion of the policy, the premiums for which were paid prior to May 29, 1936. There is no finding as to the total amount of the premiums that were paid into the policy, nor is there any finding as to the total amount of the premiums that were paid with misappropriated funds. Nevertheless, the trial court by its judgment ordered the insurance company to pay the total amount

of the insurance policy over to plaintiff on the theory there was a constructive trust of the entire policy. This was error.

Although there seems to be no case directly in point in this state, there is a line of authorities in other states to the effect that where a person has embezzled funds and used them for the payment of premiums for insurance on his life, a trust is created in favor of the person from whom they were embezzled, and that such person is entitled to such proportion of the total insurance as the amount of premiums which have been paid from the embezzled funds bears to the total amount of the premiums paid. (*Truelsch* v. *Miller* (*Northwestern Mutual Life Ins. Co.*) 186 Wis. 239 [202 N.W. 352, 38 A.L.R. 914] *Vorlander* v. *Keyes*, 1 F.2d 67; *Massachusetts Bonding & Ins. Co.* v. *Josselyn*, 224 Mich. 159 [194 N.W. 548]; *Dayton* v. *H. B. Claflin Co.*, 19 App.Div. 120 [45 N.Y.S. 1005]; *Holmes* v. *Gilman*, 138 N.Y. 369 [34 N.E. 205, 34 Am.St.Rep. 463, 20 L.R.A. 566]; *Coffin* v. *Shour*, 246 App.Div. 263 [285 N.Y.S. 197]; *Jansen* v. *Tyler*, 151 Ore. 268 [47 P.2d 969, 49 P.2d 372]; see, also, annotation in 38 A.L.R. 930, where many cases are collected announcing the above rule.) There is some authority that the defrauded person is limited to recovering the amount of premiums paid with the misappropriated funds (*Proctor* v. *MacClaskey*, 278 Mass. 238 [179 N.E. 600]; *Board of Public Instruction* v. *Mathis*, 132 Fla. 289 [181 So. 147]), but the better reasoned cases permit a *pro tanto* recovery. None of the other contentions of appellant warrant discussion.

That portion of the judgment providing that plaintiff should be paid the entire insurance policy is reversed with instructions to the trial court to ascertain the amount of the total premiums on the policy and the amount of such premiums paid since May 29, 1936, and to grant plaintiff a *pro tanto* interest in the policy; the balance of the judgment is affirmed. All parties to bear their own costs on this appeal.

Knight, J., and Ward J., concurred.