BAXTER HOUSE, INC., et al., Appellants, *v.* HATTIE ROSEN et al., Individually and as Administratrices of the Estate of GEORGE ROSEN, Deceased, Respondents.

Second Department, March 20, 1967.

*Marlow & Marlow* (*Lenard Marlow* of counsel), for appellants.

*Warshaw, Franks & Lebow* (*Ernst L. Bendix* and *I. Alan Harris* of counsel), for respondents.

HOPKINS, J. This appeal, directed to the sufficiency of plaintiffs' amended complaint, presents issues concerning the extent to which creditors of an insured decedent may recover moneys used by the decedent in payment of premiums due upon contracts insuring his life and by him made payable to donee beneficiaries. Plaintiffs each have separately alleged two causes of action the facts of which, except for the sums of money demanded, are essentially identical.

In the first and third causes of action plaintiffs, Baxter House, Inc., and Vanderbilt Towers, Inc., alleged that between December, 1947 and July, 1961 an insurance company issued 11 policies of life insurance to George Rosen by which his life was insured for the benefit of defendants variously, for the aggregate sum of $2,000,000. Between stated times in April and July, 1963, Rosen became indebted to Baxter House, Inc., the total sum reaching $24,000; and in April, 1963 he was indebted to Vanderbilt Towers, Inc., in the sum of $19,000. From April 30, 1963 until his death on August 28, 1963, Rosen, actually intending to defraud his creditors, paid premiums due upon certain of the above policies without any consideration having

been given by defendants. At the time of the premium payments, Rosen was insolvent or was thereby rendered insolvent. In September, 1963, Rosen's daughters, defendants Irene and Roslyn, qualified as administratrices of his estate. In September, 1963, defendants were paid $1,939,329.39 under the policies. Between the issuance of the first of the policies in December, 1947 and his death in August, 1963, Rosen made premium payments in the total sum of $290,403.80. Under these two causes plaintiffs seek an adjudication that the premium payments thus fraudulently made by Rosen in 1963 be declared void and that defendants be required to render an accounting and to pay the sums of $24,000 and $19,000, with interest, from the policies' proceeds.

In the second and fourth causes of action, plaintiffs alleged that Rosen intentionally converted the above sums of $24,000 and $19,000 from them, respectively, and used the moneys to pay premiums due upon certain of the policies. Under these two causes plaintiffs seek to impress trusts upon the proceeds of the policies, and to require defendants to account to plaintiffs for those proceeds and to pay to each plaintiff from the proceeds "that portion of the entire proceeds * * * which the premiums paid with monies belonging to, and wrongfully taken from plaintiff bears to the premiums paid with monies belonging to those other than this plaintiff, together with interest thereon from September 10, 1963."

Special Term held, in construing section 166 of the Insurance Law,[1] that because Rosen had never changed the beneficiaries

---

1. Subdivision 1 of section 166 of the Insurance Law, insofar as it is relevant to this appeal, provides: "If any policy of insurance has been or shall be effected by any person on his own life in favor of a third person beneficiary, or made payable, by assignment, change of beneficiary or otherwise, to a third person, such third person beneficiary, assignee or payee shall be entitled to the proceeds and avails of such policy as against the creditors * * * of the person effecting the insurance."

Subdivision 4 of section 166 of the Insurance Law provides in part: "Every assignment or change of beneficiary, or other transfer, shall be valid, except in cases of transfer with actual intent to hinder, delay or defraud creditors, as such actual intent is defined by article ten of the debtor and creditor law; in case of transfer with such actual intent, creditors shall have all the remedies provided by said article ten. Where a policy of insurance, theretofore payable to the estate of the insured, is, by assignment, change of beneficiary or otherwise, made payable to a third person beneficiary, such assignment, change of beneficiary or other transfer shall be valid, unless made with such actual intent. Subject to the statute of limitations, the amount of premiums or other consideration paid with actual intent to defraud creditors as provided in said article ten, together with interest on such amount, shall enure to the benefit of creditors from the proceeds of the policy or contract".

initially named by him under the 11 policies, nor had ever assigned or otherwise transferred the policies, plaintiffs cannot recover, under the first and third causes of action, the moneys Rosen used to pay the insurance premiums.

We think Special Term's construction of subdivision 4 of section 166 is erroneous (contra, *Rowen* v. *Commissioner of Internal Revenue*, 215 F. 2d 641 [2d Cir.]). First, its construction leads to an unreasonable result. It requires insurance beneficiaries of insolvent debtors to surrender premiums fraudulently paid only when an " assignment or change of beneficiary, or other transfer " has been effected in fraud of creditors. But no public policy or other reason appears, nor do defendants suggest one, to sustain the giving of relief to defrauded creditors only when insured debtors have, for example, changed the beneficiaries of their insurance contracts. Even in the absence of an assignment, change of beneficiary or other transfer, defrauded creditors are injured by their debtors' use of moneys for the payment of premiums. Second, the language of subdivision 4 of section 166 itself supports the contrary construction that the mere payment of premiums by an insured fraudulent debtor suffices to enable his creditors to recover the sum of such premiums for the satisfaction of his debts.[2]

Thus, subdivision 4 of section 166 provides that an insurer who has issued a policy under which premiums have been paid in actual fraud of creditors shall not be liable if the insurer, not having received notice of the creditors' claims, pays the proceeds in accordance with the policy's " terms, or in accordance with any assignment, change of beneficiary or other transfer ". If Special Term's construction is correct, there would have been no reason to protect the insurer against liability in paying proceeds under an unaltered contract. The language of this subdivision, moreover, is specific about the nature of the defrauded creditor's claim, notice of which, upon receipt by

---

2. Subdivision 4 of section 166 of the Insurance Law provides in addition to, and immediately following, the language of that subdivision set forth in footnote 1: " but the insurer making or issuing such policy or contract shall be discharged of liability thereunder by making payments thereunder in accordance with its terms, or in accordance with any assignment, change of beneficiary or other transfer, unless before any such payment such insurer shall have received written notices, by or on behalf of any such creditor, of a claim to recover any such benefits or portion thereof on the ground of a transfer or payment made with intent to defraud such creditor. Such notice shall specify the amount claimed or such facts as will enable the insurer to ascertain such amount, and shall set forth such facts as will enable the insurer to ascertain the insurance or annuity contract, the person insured or annuitant and the transfers or payments sought to be avoided on the ground of fraud."

the insurer, requires the insurer to withhold payment of the insurance proceeds. The creditor's claim must be on the ground of " a transfer or payment made with intent to defraud such creditor." The creditor's notice must specify " the transfers or payments sought to be avoided on the ground of fraud." Hence, if only fraudulent transfers entitled creditors to relief under the Debtor and Creditor Law, it would have been unnecessary to require creditors to specify premium payments they sought to avoid on the ground of actual fraud.

With respect to the second and fourth causes of action, Special Term held that, though plaintiffs could recover a sum equal to the moneys converted, they could not recover that proportion of the insurance proceeds which represents the fractional relationship that plaintiffs' moneys bear to other moneys used in the payment of premiums. Distinguishing *Holmes* v. *Gilman* (138 N. Y. 369), in which converted trust moneys were used in payment of all premiums due upon life insurance policies, Special Term noted that the policies at bar had a lawful inception and had been lawfully financed by Rosen for years and that a fiduciary relationship between plaintiffs and Rosen had not been alleged. Nevertheless we think that the factual distinctions drawn by Special Term between *Holmes* and the case before us are insubstantial.

In *Holmes* (*supra*), a partner of the insured decedent brought an action against the latter's wife and children to impress a trust in favor of the partnership upon insurance moneys collected upon policies issued upon the decedent's life, on the ground that all the premiums had been paid with converted partnership funds. In awarding the whole fund to the plaintiff, the court intimated that, if only part of the premiums paid by the decedent had been paid with converted funds, the plaintiff could have recovered not only the sum of the converted funds so used but, at his option, a proportionate share of the insurance proceeds realized by use of the converted moneys (pp. 378–379). Accordingly, the fact that the converted moneys of the plaintiffs at bar were used only for premium payments after decedent's policies had been taken and maintained by him with his moneys does not restrict plaintiffs to an equitable lien for a sum equal to the moneys converted. It entitles them to demand a direct interest in the proceeds equal to the proportion their funds bear to decedent's funds (*Coffin* v. *Shour*, 246 App. Div. 263 [1st Dept., 1936], mod. 247 App. Div. 719; *Dayton* v. *Claflin Co.*, 19 App. Div. 120 [1st Dept., 1897]; *Matter of Clark*, 69 Misc. 527 [Surrogate's Ct., N. Y. County, 1910]; see, also, *Vorlander* v. *Keys*, 1 F. 2d 67 [8th Cir., 1924]; *Brodie* v. *Barnes*, 56 Cal.

App. 2d 315 [1942]; *Field* v. *Bank of America Nat. Trust & Sav. Assn.*, 100 Cal. App. 2d 311 [1950]; *Massachusetts Bonding & Ins. Co.* v. *Josselyn*, 224 Mich. 159 [1923]; *Jansen* v. *Tyler*, 151 Ore. 268 [1935]; *Truelsch* v. *Miller*, 186 Wis. 239 [1925]; 4 Scott, Trusts [2d ed., 1956], § 516.1, p. 3294).

Special Term's holding that the absence of a fiduciary relationship between plaintiffs and Rosen prevents plaintiffs' recovery of a proportionate share of the insurance proceeds would produce an inconsistent result. It would allow the victim of a fiduciary converter to reach a proportionate share of insurance proceeds but, with respect to such a share, close the door to a victim of a thief, leaving that victim only with an equitable lien on the proceeds to the extent of the larceny. Correlatively, it would leave the nonfiduciary thief with the increment attaching to his use of converted moneys. Certainly, if trustees may not profit from breaches of trust, and hence should disgorge proportionately the value which has been earned by the use of converted trust moneys (*Holmes* v. *Gilman*, 138 N. Y. 369, 379, *supra*), the nonfiduciary intentional converter should not be left in a better position because, as a nonfiduciary, he pilfered the property of another. While the court in *Holmes* stated that "The right to follow the funds springs from the fiduciary nature of Gilman's position with regard to them" (p. 377), its description of the right did not foreclose the identity of other relationships which would give rise to the right to follow funds taken by a fiduciary converter. Equity, in the absence of a fiduciary or other trust relationship, will trace moneys taken by a converter and impress an implied trust *in invitum* on them or on any other property into which the funds may have been transformed, provided that the rights of a bona fide purchaser have not intervened (*Newton* v. *Porter*, 69 N. Y. 133). In the case of the intentional, nonfiduciary converter, there is no reason to limit the scope of the injured party's remedy to that of an equitable lien. He may reach beyond a recoupment of the funds converted and gather in any increment that has resulted from their use (*Newton* v. *Porter*, *supra*; 4 Scott, Trusts [2d ed., 1956], § 508.1).

Last, Special Term, in determining the sufficiency of the second and fourth causes of action, relied upon an allegation of defendants' attorney, contained in an affirmation submitted in support of defendants' motion, that during the period when the alleged conversions occurred "the said George Rosen was sole stockholder of said entities" [the plaintiff corporations]. No affidavit was submitted by plaintiffs in opposition to defendants' motion. In our opinion, Special Term could not consider

defendants' attorney's allegation in determining whether the second and fourth causes of action are legally sufficient. Such an allegation could have been considered only if Special Term had treated defendants' motion as one for summary judgment (CPLR 3211, subd. [c]).

Accordingly, the order should be reversed insofar as appealed from and defendants' motion to dismiss the four causes of action alleged in the amended complaint should be denied *in toto,* with one bill of $10 costs and disbursements, payable to plaintiffs jointly, and the time to answer the amended complaint extended until 20 days after entry of the order hereon.

RABIN, J. (dissenting). I dissent and vote to affirm the order under review insofar as appealed from, for the reasons set forth in the learned Special Term's opinion (47 Misc 2d 77) and also on the ground set forth hereinbelow.

The policies here involved all had valid inceptions before the assured allegedly paid premiums thereon when he was insolvent or was thereby rendered insolvent. The policies constituted property purchased with the assured's personal funds in which the defendants had acquired vested interests. Therefore, when the assured used the funds plaintiffs claim were theirs to pay premiums, he was not mingling plaintiffs' funds with property of his own, but mingling it with property belonging to his wife and daughters who, so far as appears, were innocent of any wrongdoing (*Coffin* v. *Shour,* 246 App. Div. 263, 265, mod. 247 App. Div. 719). While plaintiffs were thereby deprived of so much of their property as was illegally invested in the policies, it does not necessarily follow that they are entitled to recover to the exclusion of the innocent beneficiaries of the policies. The rule to be applied is that the beneficiaries and plaintiffs are entitled to share in the proceeds of the policies in the proportion that the personal funds of the assured were used, free of the claims asserted by plaintiffs, and the moneys of which plaintiffs were fraudulently deprived each bear to the total premiums paid, limited, however, to the quantum of each plaintiff's claim (*Coffin* v. *Shour, supra,* p. 265).

Plaintiffs could follow the full proceeds of the policies here involved only if the assured had used funds belonging to his creditors to pay the first and all succeeding premiums on the policies. In that event, plaintiffs could follow not only the amounts misappropriated but the full amount of the fund usurped " and perhaps even * * * any excess (*Holmes* v. *Gilman, supra,* p. 385). This is upon the theory that the beneficiary had no right of property in the policies at the time the

premiums were paid with converted funds. (*Shaler* v. *Trowbridge,* 28 N. J. Eq. 595.) The trustee in such a case does not commingle trust funds with any existing interest in the policy because the beneficiary acquired an interest only as the result of funds which were misapplied '' (*Coffin* v. *Shour, supra,* pp. 264, 265).

Based on the principles just discussed, the learned Special Term properly concluded that plaintiffs could maintain no right to recovery upon their first and third causes of action, which sought judgment directing defendants to pay the amounts due to plaintiffs, as creditors, from the proceeds of the policies in suit, on the theory that the assured's payments of premium rendered him insolvent and constituted a fraud on his creditors. He likewise properly concluded that plaintiffs could recover on their second and fourth causes of action, which sought judgment on the theory that the assured's payments of premium constituted a misappropriation or conversion of creditors' funds and rendered the whole proceeds of the policies into a trust fund, only to the extent that plaintiffs can trace the misappropriated or converted moneys to premiums paid on the policies.

UGHETTA, Acting P. J., CHRIST and BRENNAN, JJ., concur with HOPKINS, J.; RABIN, J., dissents in separate opinion.

Order of the Supreme Court, Queens County, dated July 26, 1965, reversed insofar as appealed from and defendants' motion to dismiss the four causes of action alleged in the amended complaint denied *in toto,* with one bill of $10 costs and disbursements, payable to plaintiffs jointly. The time to answer the amended complaint is extended until 20 days after entry of the order hereon.