Argued March 5; affirmed June 18, 1946

# BENNINGHOFF *v.* BENNINGHOFF ET AL.

(170 P. (2d) 379)

CHARLES W. REDDING, Judge.

*Bardi G. Skulason,* of Portland, for respondent.

*Harold J. Warner,* of Portland (with Platt, Henderson, Warner, Cram & Dickinson, of Portland, on brief), for appellants.

ROSSMAN, J. This is an appeal by three of the four defendants from a decree of the circuit court which held that, as a result of a gift to the plaintiff from the defendant, George F. Benninghoff, in November, 1943, the plaintiff was the owner of all of the stock, equipment, accounts receivable, et cetera, of a business enterprise located in Portland, conducted under the assumed name of American Linen Supply Company. The decree held, however, that the defendant, George F. Benninghoff, remained owner of the business name.

The complaint named four defendants, one of whom defaulted. Hereafter when we speak of defendants we shall mean the three who submitted answers. They are now appellants. One of them, the aforementioned George F. Benninghoff, is the father of the plaintiff-respondent, Anthony Benninghoff. Another is the latter's sister and a third is his brother. The subject matter of the suit is the stock, books, machinery, fixtures, appliances, customers list and accounts receivable belonging to the concern. It is engaged in the linen supply service. Paragraph II of the complaint alleges that on November 10, 1943, the father was the owner of the business, and Paragraph III says that on that day, "in consideration of $1 to him paid by the plaintiff, and his love and affection for the plaintiff, he sold and transferred to the plaintiff" the business. The answer admits Paragraph II and denies Paragraph III.

The appellants (defendants) submit two assignments of error. The first claims that error was committed when the trial judge denied a motion made by the defendants which sought to require the plaintiff to elect whether he claimed title to the property "through gift or owner by sale." The second assignment of error contends that the court erred when it held that the appellant, George F. Benninghoff, "made a gift to the respondent of the business known as American Linen Supply Co., such conclusion not being supported by any evidence."

We shall now consider the first assignment of error. It will be recalled that the complaint says that the consideration for the bill of sale was $1 paid by the plaintiff to his father, and the latter's love and affection for his son. The conjunctive "and" is employed, not disjunctive "or". The appellants claim that an election between the two units of consideration should have been ordered, and cite: *Jansen v. Tyler,* 151 Or. 268, 47 P. (2d) 969, 49 P. (2d) 372; *L. B. Menefee Lumber Co. v. MacDonald,* 122 Or. 579, 260 P. 444; *Johnson v. Homestead-Iron Dyke Mines Co.,* 98 Or. 318, 193 P. 1036; *Rehfuss v. Weeks,* 93 Or. 25, 182 P. 137; and *Whitten v. Griswold,* 60 Or. 318, 118 P. 1018.

The Johnson and Menefee cases were not concerned with averments of inconsistent facts. In the Whitten case the pleader voluntarily made a choice between two facts which his adversary claimed were inconsistent. The Rehfuss decision was concerned with defenses which the appellant claimed were inconsistent. This court, after reviewing the lower court's ruling which denied the motion to elect, said: "We see no inconsistency in the two statements." The circuit court's ruling was affirmed. The decision pointed out that

elections are required only when the facts alleged "are so inconsistent that if the truth of one defense be admitted, it will necessarily disprove the other." In the Jensen case the trial court required an election between two sets of facts which, the opinion of this court said, "seem to proceed on two theories which are not wholly consistent."

■ Clearly, no election is required if the alleged facts are not inconsistent and may be true. In the present instance, the averment is that the father, in consideration of one dollar paid to him by his son, and also in consideration of the love and affection which he held for his son, gave him the bill of sale. Every bit of those averments may be true. Consideration need not be unitary. One who owns property may, if he chooses, transfer it to another in consideration of one dollar, together with love and affection. If he does so, and if the transferee is later required to indicate the consideration, he would have no choice except to employ the language chosen by the present plaintiff. We find no merit in the first assignment of error.

■ In support of the second assignment of error, the appellants argue: (1) The name of the business was an essential part of the contemplated gift and, since the name was not transferred, the gift was not completed; and (2) the consideration specified in the complaint was not proved. The bill of sale was received in evidence. It expresses the consideration thus: "The sum of One ($1.00) and 00/100 Dollars." The decree of the circuit court found that the appellant, George F. Benninghoff, "made a gift" to his son Anthony of the property described in the complaint. We read the transcript of evidence carefully and are satisfied

that the trial judge did not err in arriving at his conclusion. We shall narrate the facts briefly.

The father lives in Minneapolis and is the manager of a large concern located there entitled American Linen Company. Its founders were two brothers who knew how to work together and who achieved success. Hoping that his sons could duplicate the career of those two men, the father established in Portland in 1936 the business with which we are now concerned and placed his eldest son, John, in charge of it. Shortly another of his sons joined the enterprise. The father, however, remained in Minneapolis. By the time of the trial he had invested in the business $30,832.17. He never received any returns from it, nor did he establish it with any thoughts of profits for himself. He hoped that his sons would grow up in the business and that it would eventually become their own. His children, however, lacked the capacity of getting along together—no one of them would submit to the supervision of the others. Instead of reports reaching the father that his children were succeeding, there came to him stories of bickering and dissension. First one son and then another became manager of the business. They vaguely deemed themselves partners in the enterprise or owners of the business. By December of 1941 matters had come to such a sad state of affairs that the father, in order to straighten out the matter of ownership, instituted a suit resulting in a receivership. Eventually the suit terminated in a decree which adjudged the father owner of the business. Then Joseph, who filed no answer in this suit, became manager. Less than a year later Anthony, who had been in the army, was discharged, and in April of 1943 visited in his parents' home. Near the end of the visit the father received a long distance call

from Joseph and was given discouraging news. At the conclusion of the telephone conversation the father, so he testified, told Anthony: "You go out there and you go and see Joe. Any deal that you make with Joe and John out there I will go for." After repeating that statement, as a witness, the father added: "I was getting pretty tired of the trouble." Having made that observation, he said that he told Anthony upon the aforementioned occasion: "Any deal that you make out there will be acceptable to me and I will take it, but it has to include John and Joe." Anthony thereupon came to Portland and in a month or so the brothers agreed that he was to have the business. This information was sent to the father and on November 10, 1943, the latter signed the bill of sale. The transaction, it will be seen, was not hastily consummated. Seven months passed·after the conversation in Minneapolis before the bill of sale was executed. In the meantime, that is, in September, the father made a visit to Portland and talked to his sons. A Portland attorney, Mr. B. G. Skulason, prepared the bill of sale at Anthony's request and mailed it to the father. According to Anthony, several alterations were made to the instrument before it was signed. He expressed the process thus: "No, this was sent back, and it was sent back and forth several times and corrected through Mr. Skulason and Dad and myself, and then the final issue or the final drawing up of this was drawn up after the amount was determined, and it was sent back to him and signed." After the bill of sale had been signed the bank account was transferred into Anthony's name and he assumed exclusive charge of the business. A couple of days after the father signed the bill of sale he wrote Anthony a letter in which he said: "I signed and mailed

to Mr. Skulason the Bill of Sale conveying the business of the Am. Linen Supply Co. to you this last week. You are now at liberty to take any action that you see fit. * * * You have to assume the responsibility of everything that is done from now on." Two weeks later he wrote Anthony a lengthly letter containing many practical suggestions concerning the operation of a linen supply business. One of his suggestions started thus: "I want to tell you one thing at the beginning of your business career on your own." Two weeks later there came another letter which began with these words: "I have just received yours of the 16th and congratulations to you on the growth in your business." Three months later the father wrote to Anthony a letter which contained this statement: "Now I am no longer interested in the company financially, but I am still interested in you." After the bill of sale was executed and delivered, Mr. Skulason wrote to the father concerning another matter and received a reply dated November 17, 1943, which said: "It seems to me that Tony is amply safe-guarded with a recording of that Bill of Sale that I gave him for that property * * *. The understanding between Tony and myself is to the effect that the acquisition of this business on his part, clear and free of debt, is to constitute his sole claim to inheritance in my estate that I may have when I die. We have agreed on this point * * *."

After the bill of sale Anthony operated the business and no one questioned his title to it until September, 1944. The following month this suit, in part for a declaratory decree, was instituted. We are entirely satisfied that the father intended to, and did, give to Anthony the personal property which constituted the business. The fact that he did not transfer the name, Ameri-

can Linen Supply Company, we deem unimportant. It may have been an oversight. At any rate, the evidence does not disclose that the father expressly agreed to assign to his son the use of that name. It will be recalled that the corporation for which the father worked possessed that name. In short, we believe that a gift was made and that it was fully consummated.

■ The suggestion that the complaint alleges both a good and a valuable consideration, whereas the evidence establishes a gift, discloses what common law practice termed a variance. Section 1-1001, O. C. L. A., says:

"No variance between the allegation in a pleading and the proof shall be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it shall be alleged that a party has been so misled, that fact shall be proved to the satisfaction of the court, and in what respect he has been misled; and thereupon the court may order the pleading to be amended upon such terms as shall be just."

The appellants do not claim that they were misled by the fact that the complaint alleged consideration, whereas the evidence disclosed a gift. The plaintiff, as a witness, freely conceded that he gave nothing for the bill of sale. The appellant, George F. Benninghoff, himself signed the bill of sale, and all of the parties were familiar with its terms before the trial got under way. Nowhere is there the faintest intimation that the appellants were prejudiced in maintaining their defense through this misplay of the pleadings. Section 1-1002, O. C. L. A., says:

"When the variance is not material, as provided in the last section, the court may direct the fact to

be found according to the evidence, or may order an immediate amendment, without costs."

This is one of the instances for which that section makes provision. We are satisfied that the variance did not prejudice the appellants. The second assignment of error is without merit.

■ Although the assignments of error can be simply dealt with in the above manner, back of them looms a problem which is a difficult one. We are not called upon to attempt its solution, but, in fairness to the father, shall mention the facts which concern it. The evidence indicates that a generous father, who was a capable businessman, established an industry in Portland, hoping that some day it would be a blessing to his children. He was not thinking of himself, but was looking forward to the time when he could transfer the business to his children and derive pleasure from seeing them prosper. In a period when the circumstances of the enterprise were disheartening he lost sight of his ultimate purpose and gave a bill of sale to one of his sons, thereby transferring the entire business to only one of the objects of his bounty. Later he regretted what he had done and wished to regain the property. Seemingly he thought that since the business was the result of his initiative and money, he ought to have the establishment back. But we can not relieve him from the consequences of his action—his gift was completed. It was contrary to his ultimate objective, but nevertheless represented his own free volition. Whether the son retains or returns the property rests entirely with his conscience. We, however, recognize the father's situation by ordering that neither party recover costs or disbursements.

The decree of the circuit court is affirmed.