Argued January 27, reversed February 24, 1954

ADKINSON *v.* BARTRON

266 P. 2d 1062

*Carrell F. Bradley,* of Hillsboro, argued the cause for appellant. On the brief were Patterson, Bush & Bradley, of Hillsboro, and Ray & Pennington, of Eugene.

*Willard C. Schwenn,* of Hillsboro, argued the cause for respondent. On the brief were Schwenn & Brink, of Hillsboro.

Before LATOURETTE, Chief Justice, and WARNER, LUSK, BRAND, TOOZE and PERRY, Justices.

PERRY, J.

This is a suit brought by the plaintiff to set aside a deed executed and delivered by himself to the defendant. The plaintiff prevailed and the defendant has appealed.

The evidence discloses that on January 20, 1941, the plaintiff was married to one Katherine Thrapp; that no children were born of this marriage, but both the plaintiff and Katherine Thrapp had children by previous marriages; that at the time of the marriage of the parties, Katherine Thrapp was the owner of a small residential property of not a great deal of value; and that the plaintiff had for several years prior to their marriage roomed and boarded with Mrs. Thrapp. The evidence further discloses that plaintiff was a laborer of little education and that Mrs. Thrapp seemed to be the dominant one after the marriage of the parties, and that by her sagacity in the exchange of real property and by plaintiff's labors they managed to accumulate, and owned at the time of her death, the real property in question, which real property was encumbered by a mortgage of around $225.

Mrs. Thrapp-Adkinson died on February 15, 1950, and at the time of her death her son Drexel Thrapp, her daughter Willda Elizebeth Bartron (the defendant herein), and other children of the deceased returned for the funeral. The plaintiff at the time of his wife's death, and the transactions involved herein, was 67 years of age.

A day or two following the death of Mrs. Thrapp-Adkinson, the plaintiff went with Dexter Thrapp, a son of the deceased, to make arrangements in the ceme-

tery for the burial of the body, and on that trip the matter of the real estate in question was discussed to the following extent only:

"Q When you were on this trip did you have occasion to discuss this property in Hillsboro, which is subject to this lawsuit, Lot 4, Block 1, Highland's Addition in Hillsboro; did you have opportunity to discuss that property?

"A He [Drexel] asked me about it, to make it deeded to his sister, thought it would be her mother's wishes to have something and wondered if it would be all right for her to have something so that she would have something in her old days to have a place to live.

"* * * * * *

"Q As near as you can, you tell us what he told you at that time.

"A Well, he just wanted to know, thought if it would be all right to make the deed to her, this girl, because the mother always spoke good of her, his mother would rather have her have it, he said.

"Q Now, Mr. Adkinson, you refer to "her", you are talking about Willda Elizebeth Bartron?

"A Willda Elizebeth Bartron, yes. She was the one she always felt if she anything to give she wanted to give it to her."

Eight or nine days following the above conversation Drexel Thrapp and the plaintiff, having arranged the date, met, and at the request of the plaintiff went to the office of a Mr. Seabold, a real estate dealer who had previously loaned money to the Adkinsons and handled real estate transactions for them. Drexel Thrapp took no part in the conversation there, the plaintiff explaining to Mr. Seabold his desires in the matter and Mr. Seabold advising him to retain a life estate in the real property.

The plaintiff testifying as to his state of mind at the time of the execution and delivery of the deed, testified as follows:

"Q You knew at the time you signed it you were making this conveyance to her? (Willda Elizebeth Bartron)

"A Yes, I knew it was to be made to her.

"Q Yes, that was what you wanted; [,] wasn't it, that deed be made out to her?

"A I did at the time. I didn't feel like it made any difference at the time. I felt there was all there was to it anyway. I didn't have anything left—didn't make any difference.

"* * * * *

"Q (By Mr. Bush) Can you answer that question, Mr. Adkinson, what was the undue influence that you have alleged?

"A There was no influence so far as influence is concerned.

"Q There was no influence?

"A No."

The testimony further shows that the property in question is now renting for $40 per month; that the plaintiff re-married approximately two months after the death of Mrs. Katherine Thrapp-Adkinson and has been renting the property since that time.

Plaintiff further testified as follows:

"Q * * *. Now in this letter you stated nothing about any undue influence being used upon you at that time; did you think you had been influenced unduly?

"A Well, I felt like at that time, after I thought it over again quite awhile afterwards, I felt I shouldn't have done it. I was grieving over my wife, I felt so bad over losing my wife, I didn't care at that time.

"Q Then, you wanted to get the property back later, after you remarried?

"A Yeah."

From Restatement of the Law, Restitution, § 166, comment (d), we quote:

"* * *. A confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interests in mind." (*Legler et al. v. Legler,* 187 Or 273, 310, 211 P2d 233.)

■ It must be readily seen from the detailed evidence above that Drexel Thrapp suggested only that if anything was to be left to any of the members of Mrs. Katherine Adkinson's family it should go to the defendant. There was no reliance or confidence placed by the plaintiff in Drexel Thrapp, even though such a confidential relationship may exist in the absence of a trust or agency. *Rowe v. Freeman,* 89 Or 428, 437, 172 P 508, 174 P 727.

There is no evidence in this case of wrongful or undue influence, for undue influence is that influence which effectually deprives the grantor of exercising his own will and desires, and substitutes therefor the will of another for his own. *Thomas v. Johnson,* 183 Or 405, 193 P2d 534.

No attempt was made by Drexel Thrapp to prevent the plaintiff from seeking independent advice. In fact, the plaintiff went to the scrivener of his own choice, explained what he wished to do, received and followed the advice of that scrivener after fully disclosing all of the matters existing in his mind relative to his desire to convey the property. The conditions under which this conveyance was made show that, if he relied upon the advice of anyone in connection with the trans-

action, he relied upon the independent advice he received from the scrivener of the deed.

We find nothing unfair or inequitable in the plaintiff granting to a daughter of his deceased wife a remainderman's interest in the estate where it is clear his deceased wife, the mother of the defendant, had provided the initial capital and also the sagacity for the acquiring of the property in question, and the plaintiff has retained the use and income from the property for the remainder of his life.

■ We can reach but one conclusion from this evidence: That the plaintiff desired to do what he thought his deceased wife would want him to do; that thereafter having remarried he regretted his action and desired the return of the property. However, the mere fact that one regrets what he has done and wishes to regain the property he has voluntarily conveyed is not in law sufficient reason to relieve him of his previous voluntary act. *Benninghoff v. Benninghoff,* 179 Or 154, 162, 170 P2d 379.

For the above reasons the cause must be reversed with instructions to dismiss the plaintiff's complaint.